**In re Ricardo & Olivia TORRES, Debtors.**

**Bankruptcy No. 88 B 5030.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Aug. 16, 1990.

Gary S. Tucker, Chicago, Ill., for debtors.

James D. Newbold, Asst. Atty. Gen., Revenue Litigation Div., Chicago, Ill., for Ill. Dept. of Revenue.

## MEMORANDUM OPINION ON MOTION FOR RULE TO SHOW CAUSE

JACK B. SCHMETTERER, Bankruptcy Judge.

Ricardo and Olivia Torres ("Debtors") filed their joint voluntary petition for relief

in this case under Chapter 7 of the Bankruptcy Code. This Court issued an order of discharge in Debtors' case dated July 26, 1988. On July 21, 1989 Ricardo Torres ("Torres") filed a motion for issuance of a rule against the State of Illinois Department of Revenue, Collection Division (the "IDR"), to show cause why the IDR should not be held in contempt for levying on Torres' wages to collect certain unpaid pre-petition sales tax obligations.[1] For the reasons set forth below the Court will defer ruling on the instant motion so as to allow the parties to present by Adversary Complaint the issue whether the taxes that the state seeks to collect are or not discharged.

## UNDISPUTED FACTS

Debtors filed their joint voluntary petition in bankruptcy on March 30, 1988. In their schedules accompanying their bankruptcy petition, Debtors listed an obligation to the "Illinois Department of Revenue, Sales and Excise Taxes Division" in the amount of $32,544.50. This liability arose from Debtors' ownership and operation of a grocery store.

On July 12, 1988 the IDR filed its proof of claim for unpaid sales tax obligations. The claim designated unpaid taxes owed under the Illinois Retailers' Occupation Tax Act, Ill.Rev.Stat. ch. 120, ¶¶ 440–453, the Illinois Use Tax Act, Ill.Rev.Stat. ch. 120, ¶¶ 439.1–439.22, and the Regional Transportation Authority Tax Act, Ill.Rev.Stat. ch. 111⅔, ¶¶ 701.01–705.05 (collectively these three taxes are referred to herein as Debtors' "sales tax obligations").[2]

An order granting Debtors their discharge was entered July 26, 1988. That order freed them from all "dischargeable" debts pursuant to 11 U.S.C. § 727. The order also enjoined all creditors whose judgments and obligations were discharged as a result of the order "from instituting or continuing any action or employing any process or engaging in any act to collect such debts" from Debtors. Neither Debtors nor the IDR has yet filed an Adversary Complaint to determine the dischargeability of the tax obligations. This Court has not yet determined whether the July 26th order discharged Debtors from those obligations.

Within one year from entry of the discharge order, the IDR initiated a wage levy against Torres in an attempt to collect outstanding tax obligations. In response, Torres filed this motion for a rule to show cause, seeking to have the IDR held in contempt for violating the July 26, 1988 discharge order. Torres also asks this Court to enjoin the IDR from attempting to collect the remainder of uncollected tax assessments, to compel the IDR to release and turnover to Torres the garnisheed salary, and for allowance of reasonable attorney fees. The IDR opposed the motion, asserting that taxes it sought to collect were non-dischargeable, or if they were discharged contempt sanctions should not be entered.

## DISCUSSION

### A. JURISDICTION

United States District Courts have subject matter jurisdiction over proceedings arising under, arising in, or related to a proceeding under Title 11. 28 U.S.C. § 1334(b). Each district court is authorized to refer such proceedings to the bankruptcy judges of the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such a referral pursuant to Local Rule 2.33.

Pursuant to 11 U.S.C. § 157(b)(1), a bankruptcy judge is authorized to hear and determine core proceedings which arise under Title 11. Proceedings held to determine the scope and affect of a discharge order and the dischargeability of tax claims in a Chapter 7 bankruptcy case are core proceedings. 28 U.S.C. § 157(b)(2)(I). *See In re Ryan*, 100 B.R. 411, 417 (Bankr.N.D.

---

**1.** Although Ricardo and Olivia Torres filed a joint petition in bankruptcy, only Ricardo Torres moved for a rule to show cause against IDR.

**2.** The proof of claim also asserted that certain Illinois income taxes had not been paid. Illinois does not contend that those tax obligations were nondischargeable.

Ill.1989) (Coar, J.) ("Enforcement of the discharge injunction of Section 524 must be within the core jurisdiction of this Court."). This Court is therefore authorized to enter final orders and judgments on the issues raised by Torres' motion.

## B. CIVIL CONTEMPT AUTHORITY OF THE BANKRUPTCY COURT

Torres seeks to hold the IDR liable for violating the injunction that arose pursuant to 11 U.S.C. § 524 from the discharge order. He specifically asserts that the IDR "acted in a contemptuous disregard for the orders of this court and violated same with intent and knowledge." Torres Motion p. 2. Finally and alternatively, Torres argues that the doctrine of laches should be invoked to make any nondischargeable claim unenforceable because of the IDR's failure to enforce its rights in a timely fashion.

The IDR asserts that Debtors' sales tax obligations were not discharged by the July 26th discharge order. The IDR contends that the sales tax obligations were excepted from discharge under 11 U.S.C. § 523(a)(1), that there has never been an adjudication of the issue to the contrary, and therefore it had a good faith basis for attempting to collect the sales tax obligations.

Section 524(a)(2) provides that a discharge under Chapter 7 "operates as an injunction against the commencement or continuation of an action ... to collect ... [any debt discharged under § 724] as a personal liability of the debtor." The threshold question here is whether authority to sanction for violating the discharge injunction lies in the Bankruptcy Court. In *In re Behrens*, 87 B.R. 971 (Bankr.N.D.Ill. 1988) (J. Ginsberg), *aff'd*, 1989 WL 47409, 1989 U.S. District LEXIS 1193 (N.D.Ill. 1989), *app. dismissed* 900 F.2d 97 (7th Cir. 1990), the bankruptcy court awarded sanctions against a creditor for violating that injunction. The court explained:

The problem is, of course, that there is no equivalent sanction provision to 11 U.S.C. § 524(a) when the automatic stay becomes the permanent discharge injunction by operation of law on the grant of

discharge. *See* 11 U.S.C. §§ 362(c)(2)(C), 524(a). Nevertheless, 11 U.S.C. § 524(a) is an injunction and it has long been the law in bankruptcy cases that willful violations of injunctions such as the automatic stay will give rise to contempt sanctions.

The same approach should apply under 11 U.S.C. § 524(a) even in the absence of a specific statutory sanctions provision. Creditors cannot be allowed to interfere with a debtor's fresh start by suing non-bankruptcy courts on discharged debts in the hopes the debtor will not defend or will not raise the bankruptcy discharge as a defense.

Id. at 976 (citations omitted).

■ Although there is a split in authority over whether bankruptcy courts have the power to punish for civil contempt, *see In re Elias*, 98 B.R. 332, 337 (N.D.Ill.1989) (collecting cases), the majority and better reasoned view is that a bankruptcy court can impose sanctions for civil contempt for knowing violation of the discharge injunction under 11 U.S.C. § 524(a). Such sanctions can be remedial and compensatory but not punitive. *In re UNR Industries, Inc.*, mem. op. 82 B 9841–45 (Bankr.N.D.Ill. 3/20/90); *Ryan*, 100 B.R. at 417; *Behrens*, 87 B.R. at 976; and cases cited therein.

Civil contempt ... does not require a finding of wilfulness or bad faith, for it serves a remedial rather than a punitive purpose. It is enough if the order violated is specific and definite, and that the offending party has knowledge of it.

*Elias*, 98 B.R. at 337.

## C. DISCHARGEABILITY OF THE TAX OBLIGATIONS

### 1. *Procedural Issues and Burden of Proof*

As the discussion below will illustrate, Seventh Circuit precedent applicable to the dischargeability issue is clear. However, to apply that authority here more facts must be known: (1) First, did the IDR rely on Torres' Use Tax obligations, the Retailers' Occupation Tax obligations, the Regional Transportation Authority Tax obli-

gations, or some combination thereof, to obtain the state court order authorizing it to levy on Torres' wages; and (2) Second, if the State relied only on the Retailer's Occupation Tax and/or the Regional Transportation Authority Tax obligations, when were the returns for these taxes due and were those returns filed?

Moreover, the procedural posture of the instant motion raises a number of difficulties. The IDR violated the discharge order only if the debts it sought to collect were discharged. The dischargeability of a debt depends on whether the debt was excepted from discharge under 11 U.S.C. § 523(a). A proceeding to determine the dischargeability of a debt must be by Adversary proceeding under Bankruptcy Rule 7001(6) unless the parties clearly waive that requirement.[3] The creditor bears the burden of proof on all elements necessary to establish nondischargeability. *See, e.g., In re Bogstad,* 779 F.2d 370, 372 (7th Cir.1985). Accordingly, if either the IDR or Torres had filed an Adversary proceeding to determine the dischargeability of the sales tax obligations, the IDR would have the burden of proof.

Neither party here filed such an Adversary, though under 11 U.S.C. § 523(c) and Bankruptcy Rule 4007 a complaint to determine the dischargeability of a debt under § 523(a)(1) may be filed at any time. Nor has either party clearly waived the requirement of an Adversary case. The dischargeability issue arises here as a contested matter in the context of the instant motion for contempt. Even if the parties waived the Adversary requirement, use of the contested motion procedure would not shift the burden of proof on dischargeability of debts from the IDR to Torres. In other words, although the dischargeability of the sales tax obligations sought to be collected by the State is the first element of Torres' contempt action, the IDR has the burden of establishing the nondischargeability of those taxes. If the IDR ultimately fails to establish that the debts it sought to collect are nondischargeable, then Torres must establish that the IDR knowingly violated the discharge injunction. *See In re Elias,* 98 B.R. 332, 333 (N.D.Ill. 1989).

### 2. *Nature of the Taxes*

The Retailers' Occupation Tax Act and the Use Tax Act are "complementary" statutes. *In re Groetken,* 843 F.2d 1007, 1010 (7th Cir.1989). The Retailers Occupation Tax is imposed "upon persons engaged in the business of selling tangible personal property ... at retail...." Ill.Rev.Stat. ch. 120 ¶ 441. The Use Tax complements the Retailers' Occupation Tax by imposing a tax "upon the privilege of using in [Illinois] tangible personal property ... purchased at retail...." Ill.Rev.Stat. ch. 120, ¶ 439.3. "Illinois enacted the Use Tax Act to protect its retailers from the diversion of business to out-of-state retailers and to prevent evasion of the Occupation Tax." *Groetken,* 843 F.2d at 1010. (citations omitted).

Although the Use Tax applies to both in-state and out-of-state retail purchases, the Use Tax and Retailer's Occupation Tax are not imposed cumulatively.

The Use Tax Act expressly relieves a retailer from remitting any Use Tax it collects if the retailer pays the Occupation Tax. *See* Ill.Rev.Stat. ch. 120, ¶¶ 439.8 and 439.9 (1985). Moreover, although the Occupation Tax Act does not contain a similar provision, the Illinois Court of Appeals has indicated that a retailer who pays the Use Tax does not have to pay the Occupation Tax. *See Department of Revenue v. Steinkopf,* 160 Ill.App.3d 1008, 513 N.E.2d 1016, 1019, 112 Ill.Dec. 407, 410 (1st Dist.1987), *appeal denied,* 118 Ill.2d 542, 520 N.E.2d 384, 117 Ill.Dec. 223 (1988). "Therefore,

---

**3.** The Seventh Circuit recently vacated an order of the bankruptcy court partly on grounds that an issue raised by motion should have been brought as an Adversary proceeding under Bankruptcy Rule 7001. *In re Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990). However, the same Circuit subsequently observed that *Perkins* should not be read to preclude a party from waiving its right to object to the opposing party filing as a motion some proceeding that under Bankruptcy Rule 7001 should be brought as an Adversary. *In re Pence,* 905 F.2d 1107 (7th Cir. 1990).

although there are two taxes actuated by the same sale and purchase, only one of the two payments is remitted to the State, and the single payment satisfies both taxes." Id.

*Groetken*, 843 F.2d at 1011.

The RTA tax is similar to the Retailers' Occupation Tax. The Board of Directors of the Regional Transportation Authority is authorized to impose a RTA Retailers' Occupation Tax "upon all persons engaged in the business of selling tangible personal property at retail in the metropolitan region at a rate not to exceed 1% of gross receipts from such sales made in the course of such business in the County of Cook...." Ill.Rev.Stat. ch. 111⅔, ¶ 704.03(e). The RTA tax also has an analogue to the Use Tax. In pertinent part the statute provides that if a tax is imposed pursuant to ¶ 704.039e), "a tax shall also be imposed upon the privilege of using, in the metropolitan region, any item of tangible personal property which is purchased outside the metropolitan region at retail from a retailer...." Id. at ¶ 704.03(g).

### 3. *Dischargeability*

Section 523(a)(1) excepts from discharge under § 727 debts owing from unpaid federal, state, and local taxes in certain circumstances. Section 523 provides in part:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

(A) of the kind and for the periods specified in section ... 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

Section 507(a)(7) in turn enumerates certain categories of taxes. It is these categories of taxes that are excepted from discharge under § 523(a)(1)(A). In pertinent part § 507(a)(7) provides:

[A]llowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; [or]

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition;

. . . . .

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

. . . . .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension after three years before the date of the filing of the petition

....

11 U.S.C. § 507(a)(7)(A), (C), (E).

As the quoted text indicates, taxes described in § 507(a)(7)(C), often referred to as "trust fund" taxes, are never dischargeable no matter how long the unpaid tax obligations have been outstanding. 1 Robert E. Ginsberg, *Bankruptcy* § 11.06[b] at 899 (2nd ed. 1989). In contrast, "excise taxes" described in § 507(a)(7)(E), and "gross receipts" taxes described in § 507(a)(7)(A), are excepted from discharge as long as they are not "stale." An excise tax is stale and therefore dischargeable only if the applicable tax return was due more than three years before the petition date and was filed.[4]

---

**4.** The Retailers' Occupation Tax and the Use Tax both require the filing of returns. *See* Ill.Rev. Stat. ch. 120, ¶¶ 442, 439.9.

Section 523(a)(1)(B) addresses the dischargeability of tax obligations for which a return must be filed. When a return is required and

has not been filed as of the petition date, the indebtedness arising from the tax obligation is non-dischargeable, regardless of when the tax arose. 11 U.S.C. § 523(a)(1)(B)(i); *Collier*, ¶ 523.06[3][a] at 523–25. Further, § 523(a)(1)(B)(ii)—the "last return rule"—pro-

Similarly gross receipts taxes are dischargeable if the return was due more than three years before the filing of the petition and the taxes were assessed more than 240 days (plus specified extensions) before the petition date. 11 U.S.C. § 507(a)(7)(A)(i), (ii). 1 Ginsberg, *Bankruptcy* § 11.06[b] at 898. A debt assessed within the 240 day period (plus specified extensions) is not released from discharge even if the tax became due more than three years before the date the petition was filed. 3 King, *Collier on Bankruptcy* ¶ 523.06[2][a] at 523–24 (15th ed. 1990).

■ The Seventh Circuit has specifically addressed the application of § 523(a)(1)(A) to the Illinois Use Tax and Illinois Retailers' Occupation Tax. In *Rosenow v. Illinois Dept. of Revenue,* 715 F.2d 277, 282 (7th Cir.1983), the Court specifically held that unpaid obligations under the Illinois Use Tax are trust fund taxes within § 507(a)(7)(C) and therefore excepted from discharge under 11 U.S.C. § 523(a)(1)(A), regardless of when the applicable returns were due.

■ More recently, the Seventh Circuit held in *Groetken,* 843 F.2d 1007, that even though the Illinois Retailers' Occupation Tax is a complementary statute to the Use Tax, the Retailers' Occupation Tax, unlike the Use Tax, is not a "trust fund" tax within § 507(a)(7)(C) because it is imposed directly on the retailer, not the purchaser. *Groetken,* 843 F.2d at 1013. The same case held, however, that the Retailers' Occupation Tax is a gross receipts tax under § 507(a)(7)(A) and an excise tax within § 507(a)(7)(E). Id. Obligations for unpaid taxes under the Illinois Retailers' Occupation Tax Act are therefore dischargeable if the applicable return is due more than three years before the filing of the bankruptcy petition. Id. at 1009.

In *Groetken* the State of Illinois sued debtor following his Chapter 7 discharge. Suit was to collect on a pre-petition judgment against debtor for unpaid obligations under the Retailers' Occupation Tax. The State conceded that any action to collect unpaid Use Tax obligations was barred by the applicable statute of limitations. *See* Ill.Rev.Stat. ch. 120, ¶¶ 439.12, 444, 452½ (1985). The court explained:

> The Occupation Tax Act and the Use Tax Act impose separate tax obligations on retailers that the State can independently enforce. If a retailer fails to pay the Occupation Tax the State has a claim under the Occupation Tax Act *and* a claim under the Use Tax Act.... The State may not care which tax debt it recovers because the payment of one tax extinguishes both liabilities.
>
> . . . . .
>
> If the State is concerned about the possibility of discharge in bankruptcy after any applicable limitations period may run, the State need only obtain a timely judgment against a debtor under the Use Tax Act. In fact, given the State's own contention that the evidence submitted under either statute will, as a practical matter, consist only of the retailer's gross receipts, we see no practical reason why the State does not always sue under both statutes.

*Groetken,* 843 F.2d at 1014–15 (emphasis in original).

■ Neither Torres nor the State has pleaded as to what tax obligations Illinois was attempting to collect from Torres through the wage levy. As the discussion in *Groetken* illustrates, the relationship between the Use Tax and the Retailers' Occupation Tax is significant. Sales from operation of the Torres grocery business triggered both Use Tax and Retailers' Occupation Tax obligations. Although payment of the Use Tax would satisfy the Retailers' Occupation Tax and vice versa, until one payment is actually made, both tax obligations remain outstanding.

---

vides that when a return is filed on an untimely basis, the amount of indebtedness that remains owed by the debtor will not be discharged as long as the return was filed within two years of the bankruptcy petition date. *Collier,*

¶ 523.06[3][b] at 523–25. There has been no allegation that the required returns were timely filed, or that they were filed more than two years before the filing of the bankruptcy petition.

The State might take the position that either of those unpaid taxes could serve as basis for a wage levy against Torres. The Court cannot tell from pleadings as to which tax (if not both) the State actually relied on when it pursued its wage levy in state court. If the wage levy was an effort to collect Use Tax obligations, there was no violation of the discharge order because Use Tax obligations are always nondischargeable. *Rosenow,* 715 F.2d at 282. Alternatively, if the Retailers' Occupation Tax was the basis for the wage levy, the tax obligations are excepted from discharge, unless they were stale. However, there is no way for the Court to know whether the obligations fall within the three year exception under § 507(a)(7)(E) or the three year and 240 day exceptions to discharge under sections 507(a)(7)(A). *In re Groetken,* 843 F.2d 1007, 1013–14 (7th Cir.1988). Nor does the Court learn from the pleadings whether returns were filed. (See fn. 4 *supra*).

Finally, unlike the Retailers' Occupation Tax and Use Tax, the Seventh Circuit has not addressed the dischargeability of the RTA Tax. On its face, the tax appears to fall within the exceptions under § 507(a)(7)(A) & (E). First, the tax is analogous to the Retailers' Occupation Tax and is measured by gross receipts. Second, an excise tax is an obligation imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. *Groetken,* 843 F.2d at 1012; *Dept. of Revenue v. Steinkopf,* 160 Ill. App.3d. 1008, 112 Ill.Dec. 407, 513 N.E.2d 1016 (1st Dist.1987). The RTA tax is imposed upon the privilege of engaging in retail sales in Illinois. Therefore, it appears that the RTA Tax obligations, like Retailer's Occupation Tax debts, are excepted from discharge if they are not stale.

Further, as discussed the RTA tax has a complementary use tax. If this complementary tax is a trust fund tax like the Use Tax it would be nondischargeable regardless of how long the unpaid tax obligations have been outstanding. No pleading or briefing has yet covered these issues.

For all the foregoing reasons, it is impossible at this juncture to determine whether IDR violated the discharge order when it levied on Torres' wages.[5]

## D. LACHES

As an alternative argument, Torres asserts without any citation of authority that even if the tax debt is nondischargeable, the IDR's efforts to enforce its tax claim is barred by laches.

 Under the laches doctrine, a party must show both that there was a lack of due diligence on the part of the party against whom the doctrine is to be imposed, and that the other party was prejudiced by that delay. *Smith v. City of Chicago,* 769 F.2d 408, 410 (7th Cir.1985); *Ligenfelter v. Keystone Consol. Industries, Inc.,* 691 F.2d 339, 340 (7th Cir.1982). Whether to employ the doctrine rests within the sound discretion of the Court. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1011–15 (7th Cir.1970) *cert. denied* 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971).

 However, the laches doctrine has not been shown by pleading to be applicable in this case. No facts are pleaded that show unreasonable delay by IDR in trying to enforce its tax claim. On the contrary, the IDR filed a proof of claim, and within a year sought to enforce that claim. Further, Torres has not alleged that he has been prejudiced by any delay in

---

**5.** Torres also contends that the interest on the unpaid sales obligations is dischargeable. Interest that accrues on unpaid taxes may be subject to different treatment under the Bankruptcy Code depending upon whether it is pre- or post-petition interest, and depending upon whether the underlying tax debt to which the interest is accruing is itself discharged. Generally such interest is treated in accordance with treatment of the underlying tax claim. *See In re Larson,* 862 F.2d 112, 119 (7th Cir.1988) (addressing pre-petition interest); *In re Hanna,* 872 F.2d 829, 830–31 (8th Cir.1989) (addressing post-petition interest); 1 Ginsberg, *Bankruptcy* § 11.06[b] at 899. In other words interest is discharged if the underlying tax is discharged. Given that dischargeability of the underlying taxes has not been resolved, it is impossible at this point to resolve the proper treatment of interest which has accrued on the sales tax obligations.

collection. The doctrine of laches is intended to protect against prejudice which is the consequence of the unnecessarily delayed enforcement of a valid claim. Therefore, to the extent the motion rests on the doctrine of laches, the facts pleaded seem insufficient to support the doctrine's application here.

## CONCLUSION

Neither Debtor nor the State have waived their right to pursue an Adversary Complaint to seek declarations whether or not the taxes sought to be collected were dischargeable. The instant motion cannot be disposed of until that is done. In such an action, the State will plead and presumably offer proof to establish that the taxes it seeks to collect are nondischargeable. Debtor will plead laches and any other defenses it seeks to assert. After such case is decided, the Court can then take up this motion.

One final procedural word: If movant can cross the several hurdles required to demonstrate that civil contempt sanctions can and should be imposed on the State, a notice will issue under Bankr.R. 9020(b) and the procedures of that Rule must be followed before any sanction could be ordered. The requested "Rule to Show Cause" has a long and honorable history in the law of equity, but is not applicable to civil contempt in bankruptcy.

By separate order, the instant motion will be set for status report so as to give the parties time to file an Adversary case.