**In re Ricardo and Olivia
TORRES, Debtors.**

**Ricardo and Olivia TORRES, Plaintiffs,**

v.

**ILLINOIS DEPARTMENT OF
REVENUE, Defendant.**

Bankruptcy No. 88 B 5030.
Adv. No. 91 A 299.

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 30, 1992.

Gary S. Tucker, Chicago, Ill., for plaintiffs.

Patricia Marshall, James D. Newbold Asst. Atty. Gen., Revenue Litigation Div., Chicago, Ill., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This matter was tried before the Court on the Adversary Complaint of the debtor-plaintiffs, Ricardo and Olivia Torres. That Complaint seeks a declaration that debts owed by them to the Illinois Department of Revenue (the "IDR") have been discharged in bankruptcy pursuant to 11 U.S.C. § 727. Plaintiffs also ask for sanctions against the IDR in the event that the debts are found to be dischargeable. A hearing was held at which the parties submitted a list of stipulated facts and documents, and each rested on that record. No other evidence was offered by either party, and the parties rested. Having considered the pleadings, stipulations, and all other submissions of counsel, the Court makes and enters these Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. During all taxable periods between January 1980 and March 1987, Ricardo Torres ("Torres") operated a grocery store in Chicago as a sole proprietorship.

2. The IDR issued a series of assessments against Torres to collect on unpaid taxes related to the operation of the grocery store. The IDR has assessed taxes with penalties and interest under the Retailers' Occupation Tax Act ("ROT"), Ill. Rev.Stat. ch. 120, ¶ 440 *et seq.*; the Illinois Use Tax Act ("UT"), Ill.Rev.Stat. ch. 120, ¶ 439.1 *et seq.*; the Municipal Retailers' Occupation Tax Act ("MROT"), Ill.Rev.Stat. ch. 24, ¶ 8–11–1; and the Regional Transportation Authority Act ("RTA"), Ill.Rev. Stat. ch. 111-⅔, ¶ 704.03. The following assessments were made:

| Assessment | Taxable Periods | Type of Tax | Tax | Penalty | Interest |
|---|---|---|---|---|---|
| E–11906 | 1/80–12/80, 2/81–5/83 | ROT & UT | 6,316.00 | 352.55 | 8,322.66 |
| | | MROT | 2,893.00 | 161.00 | 3,783.68 |
| E–3415 | 1/80–6/80 | RTA | 254.00 | 12.70 | 400.05 |
| E–3416 | 7/80–12/80 | RTA | 237.00 | 11.85 | 359.05 |
| E–3417 | 1/81–6/81 | RTA | 519.00 | 42.30 | 755.82 |
| E–3418 | 7/81–12/81 | RTA | 475.00 | 23.75 | 654.69 |
| E–3419 | 1/82–6/82 | RTA | 483.50 | 24.17 | 609.21 |
| E–3420 | 7/82–5/83 | RTA | 924.50 | 46.23 | 1,004.87 |
| F–900617 | 7/83–6/86 | ROT & UT | 418.00 | 21.00 | 224.45 |
| | | MROT | 274.00 | 14.00 | 146.85 |
| | | RTA | 274.00 | 14.00 | 146.85 |
| G–278703 | 9/86–3/87 | ROT & UT | 654.22 | 196.28 | 108.41 |
| | | MROT | 130.83 | 39.27 | 21.68 |
| | | RTA | 130.83 | 39.27 | 21.68 |

Stip. Exs. A–G, Q–R.

3. The parties stipulate that Assessments K–45512 and K–32184 which relate to unpaid ROT and RTA taxes are discharged.

4. The IDR has also issued nine "late filing" assessments against Torres which total $129.44. Stip. Exs. H–P. These assessments relate to underpayments of amounts due for ROT, MROT, UT, and RTA taxes. These assessments consist of a "Penalty for late filing" plus interest on those penalties.

5. The figures given above reflect the amount of interest owed when each assessment was issued. The total amount of interest owed continues to increase because all of these assessments continue to accumulate interest at a rate of 1¼% per month for each month after January of 1987.

6. The IDR has received some payments from plaintiffs, and the parties stipulate that the payments were properly to be applied as follows:

| Assessment | Payment applied to assessment |
|---|---|
| E–11906 | $1,102.66 |
| E–3415 | 666.75 |
| E–3416 | 607.90 |
| E–3417 | 1,317.12 |
| E–3418 | 976.78 |
| E–3419 | 355.75 |
| F–900617 | 1,098.30 |
| G–278703 | 217.07 |
| "late filing" fees | 45.18 |

7. These assessments were only issued against Ricardo Torres, and the IDR does not assert any claim for taxes against Olivia Torres relating to the grocery store.

8. Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code on March 30, 1988. An Order granting Debtors a discharge under 11 U.S.C. § 727 was entered on August 18, 1988.

9. Within one year of the entry of the Discharge Order, the IDR attempted to collect on outstanding tax obligations. In response, Debtors filed a motion, seeking to have the IDR held in contempt for violating that Order. The Court found that the true issue presented by that motion was whether the tax obligations were dischargeable under 11 U.S.C. § 523. *In re Torres*, 117 B.R. 379 (Bankr.N.D.Ill.1990). Since dischargeability must be determined by an Adversary Proceeding, *see* Fed. R.Bankr.P. 7001(6), the Court continued the motion in order to allow for filing of an Adversary Complaint. 117 B.R. at 387. This Adversary case followed.

## CONCLUSIONS OF LAW

1. This Adversary case relates to the debtor-plaintiffs' bankruptcy proceeding under Chapter 7 of the Bankruptcy Code. It is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

■■ 2. The issue in this case is whether the Torres' tax debt to the IDR is exempted from discharge under 11 U.S.C. § 523(a)(7). As a creditor, the IDR bears the burden of proof to establish an exception to the discharge of a debt in bankruptcy. *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985). To prevail, the IDR must establish all necessary elements by a preponderance of the evidence. *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

3. Section 523(a) of the Bankruptcy Code provides in relevant part,

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of a kind and for the periods specified in sections 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition

.   .   .   .   .

(7) to the extent that such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition....

11 U.S.C. § 523(a)(1) and (7). This section refers to § 507(a)(7) which enumerates certain categories of taxes and excepts them from discharge. Section 507(a)(7) refers in relevant part to taxes consisting of

(7) allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

.    .    .    .    .

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

.    .    .    .    .

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

.    .    .    .    .

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss....

11 U.S.C. § 507(a)(7).

4. This Court has previously analyzed Seventh Circuit precedent in considering whether the different taxes assessed by the IDR against Torres are dischargeable in this case. *See In re Torres*, 117 B.R. at 382–87. Since neither party has offered any authority to contradict the earlier rulings,[1] there is no need to repeat the analysis necessary to decide this case. The Court shall adopt its earlier reasoning, and concludes (based on the earlier discussion) that:

A. Taxes due under the Retailers' Occupation Tax Act are excise taxes within the meaning of 11 U.S.C. § 507(a)(7)(E). As such, they are dischargeable if they were due more than three years prepetition. *Torres*, 117 B.R. at 385, citing *Rosenow v. Illinois Department of Revenue*, 715 F.2d 277 (7th Cir.1983) and *In re Groetken*, 843 F.2d 1007 (7th Cir. 1988).

B. Taxes due under the Use Tax Act are trust fund taxes within the meaning of 11 U.S.C. § 507(a)(7)(C). As such, they are not dischargeable. *Id.*

C. Taxes due under the Regional Transportation Authority Act are excise taxes, and are accorded the same treatment as taxes due under the Retailer's Occupation Tax Act. *Id.* at 386.

■ 5. Any tax due under the Retailers' Occupation Tax Act is also due under the Use Tax Act. As the Seventh Circuit explained,

If a retailer fails to pay the Occupation Tax, the State has a claim under the Occupation Tax Act *and* a claim under

---

1. Torres' counsel never complied with the Court's request for closing argument to be submitted in written form. However, the Court has researched this issue independently and has not found any opinions issued since its previous ruling that relate to the issues at hand.

the Use Tax Act.... The State may not care which tax debt it recovers because the payment of one tax extinguishes both liabilities.... we see no practical reason why the State does not always sue under both statutes.

*Groetken,* 843 F.2d 1014–15 (emphasis in original). Therefore, as long as the IDR's claim lies under both statutes, the Court must treat the liability as being entirely due under both statutes.

■ 6. The IDR contends that taxes due under the Regional Transportation Authority Act and the Municipal Retailers' Occupation Tax Act are trust-fund taxes under § 507(a)(7)(C) because they are collectable directly from customers of the retailer. However, a simple examination of these acts shows that this is not so. Both Acts are substantially similar. They both authorize certain governmental bodies to "impose a tax upon all persons *engaged in the business of selling tangible personal property at retail.*" Municipal Retailers' Occupation Tax Act, Ill.Rev.Stat. ch. 24, ¶ 8–11–1; Regional Transportation Authority Act, Ill.Rev.Stat. ch. 111⅔, ¶ 704.03(e) (emphasis added). These Acts mirror the language of the Retailers' Occupation Tax Act, see Ill.Rev.Stat. ch. 120, ¶ 441, and stand in stark contrast to the language of the Use Tax Act which provides that a tax "is imposed upon *the privilege of using* in this State tangible personal property." Ill. Rev.Stat. ch. 120, ¶ 439.3 (emphasis added).

These Acts both allow retailers to charge this tax on to their customers together with other forms of sales taxes, but this does not turn the RTA tax or the MROT tax into trust fund taxes. Indeed, these Acts specifically provide that retailers may charge to customers in order to "reimburse themselves for their seller's tax liability". MROT, ¶ 8–11–1; RTA, ¶ 704.03(e). Thus, taxes due under the Regional Transportation Authority Act and the Municipal Retailers' Occupation Tax Act are excise taxes under § 507(a)(7)(E) and dischargeable in bankruptcy pursuant to § 523(a)(1) if they were due for over three years before the petition date.

■ 7. In *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), the Supreme Court found that the interest is an "integral part" of tax debts, and held that post-petition interest on undischarged tax debts may be enforced as a continuing non-dischargeable obligation against the debtor. *Id.* at 359, 84 S.Ct. at 907. Courts interpreting *Bruning* and the language of §§ 507(a) and 523(a) of the Code have consistently held that interest on tax is discharged only if the underlying tax is discharged. *In re Larson,* 862 F.2d 112, 119 (7th Cir.1988) (addressing pre-petition interest); *In re Hanna,* 872 F.2d 829, 830–31 (8th Cir.1989) (addressing post-petition interest); *In re Stahly,* 117 B.R. 410, 413 (Bankr.N.D.Ind.1989); *In re Torres,* 117 B.R. at 386, n. 1.

8. Tax penalties are not accorded the same treatment in bankruptcy as interest on tax debts. The IDR does not claim that the tax penalties assessed against Torres are compensatory in nature. However, it argues that all the tax penalties relating to non-dischargeable taxes are non-dischargeable regardless of whether they are over three years old citing *Cassidy v. Commissioner of Internal Revenue,* 814 F.2d 477 (7th Cir.1987) for support.

In *Cassidy,* the IRS found that a taxpayer had fraudulently underpaid his income taxes, and sent out a deficiency notice to collect taxes due plus a civil fraud penalty. The taxpayer challenged the assessment in tax court and then became the subject of an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. After the debtor was discharged in bankruptcy, the tax court proceedings were continued and the deficiency and penalty were upheld. The Debtor appealed, arguing *inter alia* that his liability to the IRS was discharged in bankruptcy. The Seventh Circuit rejected this contention as to the taxes and the penalty stating,

Because the taxpayer's deficiencies here resulted from fraud, subsection 523(a)(1)(C) renders them non-dischargeable.... Moreover, subsection 523(a)(7)(A) mandates that fraud penalties are nondischargeable if the underlying tax with respect to which the penalty

is also nondischargeable.... Because the taxpayer's deficiencies are nondischargeable, his tax penalties are similarly nondischargeable.

*Cassidy*, 814 F.2d at 480–81 (citations omitted).

9. *Cassidy* does not provide support to the IDR's position because the Seventh Circuit panel indicated that this portion of the opinion discussing § 523(a)(7)(A) is only dicta. *Matter of Cassidy*, 892 F.2d 637, 640 (7th Cir.1990). For that reason, the proposition that all penalties arising out of non-dischargeable debt are themselves non-dischargeable has been rejected by at least one court in this Circuit. See *In re Roberts*, 129 B.R. 171, 172–73 (C.D.Ill.1991) ("this portion of *Cassidy [v. Commissioner]* was dicta and not valid precedent.... the court must look to other jurisdictions for guidance on this issue"). In *Roberts*, Judge Mihm of the Central District of Illinois adopted the position taken by the Tenth and Eleventh Circuits that under § 523(a)(7), tax penalties over three years old are dischargeable regardless of the dischargeability of the underlying tax. *Roberts*, 129 B.R. at 173, citing *In re Roberts*, 906 F.2d 1440 (10th Cir.1990); *In re Burns*, 887 F.2d 1541 (11th Cir.1989). This position is also followed in bankruptcy treatises. See Ginsberg, *Bankruptcy: Text, Statutes, Rules* § 11.06[k] (2d Ed.1991); and 3 *Collier on Bankruptcy* ¶ 523.17 (15th Ed.1992).

■ 10. Furthermore, the position that tax penalties over three years old are dischargeable in bankruptcy is mandated by the plain language of § 523(a)(7). This section sets out a general rule that tax penalties are not dischargeable. However, it then sets out exceptions to this rule in subsections (A) and (B). In (A), the Code provides that penalties arising out of dischargeable taxes are themselves dischargeable. In (B), the Code provides that penalties arising out of events that happened more than three years before the petition date are dischargeable. Between subsections (A) and (B) the statute contains the word "or". Thus, subsections (A) and (B) set forth two different exceptions to the general rule set out in (7). Thus, all tax penalties relating to events over three years old as of the petition date are dischargeable regardless of whether such event gave rise to a non-dischargeable tax. The contrary reading proposed by the IDR ignores the word "or" at the end of (A), and it renders (B) meaningless. As the Tenth Circuit stated, "subsection (B) is neither ambiguous nor difficult to understand.... Subsection (B) creates an arbitrary cutoff of three years, after which all uncollected tax penalties may be discharged in bankruptcy." *In re Roberts*, 906 F.2d at 1443.

11. This reading of § 523(a)(7) is consistent with rules of statutory construction adopted by the Supreme Court and the Seventh Circuit. See *Patterson v. Shumate*, —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992) (" [a]lthough courts 'appropriately may refer to a statute's legislative history to resolve statutory ambiguity, ... the clarity of the statutory language at issue in this case obviates the need for any such inquiry") (citations omitted); *United States v. Ron–Pair Enterprises*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (" [t]he plain meaning of legislation should be conclusive, except in rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of [Congress]"); *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir.1987) ("a court need not look beyond the words to interpret a statute if the language is clear and unambiguous ... Indeed, the plain language is the best evidence of the statute's meaning"). Courts have repeatedly found that § 523(a)(7) is clear and unambiguous. Furthermore, there is no evidence to show that discharging all tax penalties over three years old in bankruptcy is demonstrably at odds with the intentions of Congress. *In re Roberts*, 906 F.2d at 1442–43; *Burns*, 887 F.2d at 1546–51.[2] Therefore, the position taken by the Tenth and Eleventh Cir-

---

2. There is some legislative history which could conceivably be construed to support the position that non-dischargeable debts always give rise to non-dischargeable tax penalties. How-

cuits as well as District Judge Mihm, ruling that tax penalty claims are dischargeable if they were over three years old as of the petition date, is correct.

12. Applying the foregoing principles to the assessments levied by the IDR, the Court concludes:

| Assessment | Type of Tax | Disposition |
| --- | --- | --- |
| E–11906 | ROT & UT | tax and interest are not discharged, penalty is discharged |
|  | MROT | tax, interest, and penalty are discharged |
| E–3415 through E–3420 | RTA | tax, interest, and penalty are discharged |
| F–900617 | ROT & UT | tax and interest are not discharged, penalty is discharged |
|  | MROT | tax, interest, and penalty are discharged |
|  | RTA | tax, interest, and penalty are discharged |
| G–278703 | ROT & UT | tax, interest, and penalty are not discharged |
|  | MROT | tax, interest, and penalty are not discharged |
|  | RTA | tax, interest, and penalty are not discharged |

13. Assessment F–900617, Stip. Ex. Q, purportedly assessed taxes for a period between July 1, 1983 and June 30, 1986. Thus, a portion of this assessment relates to a period which is less than three years pre-petition. However, there is no indication as to which portion related to activity in this period. Since the IDR has the burden of proof to establish non-dischargeability, this ambiguity must be resolved in favor of Torres.

■ 14. There is a further ambiguity concerning the application of payments to the assessments. The taxes assessed in E–11906 and F–900617 are partially dischargeable, but the payments are not allocated to any particular tax in these assessments. Once again, this ambiguity must be resolved in favor of Torres, and the entirety of these payments will be considered to be applied to the non-dischargeable portion of the assessments.

15. The "late filing" fees are all dischargeable except for assessments which relate to events occurring after March 30, 1985 (three years pre-petition). These as-

sessments include A–262818, A–293128, A–319762, and A319935. Stip. Exs. M–P. The net amount due on these assessments, after deducting payments attributed to them, is $18.91.

16. The net amount due for all of the assessments found to be non-dischargeable is $4,441.53 ($6,623.58 of assessments plus $18.91 of late filing fees less $2,200.96 in payments applied to E–11906 and F–900617). This debt continues to accrue debt at the statutory rate of 1¼% a month from January 1987, or the date of the assessment, whichever is later, to the date of payment.

17. Since the assessments have only been issued against Ricardo Torres, any possible liability of Olivia Torres on the same taxes due is discharged.

18. Some of the assessed taxes were non-dischargeable, and can be pursued by the IDR. Furthermore, the Debtors have presented no evidence to show that the IDR acted in intentional disregard of the discharge injunction. Therefore, the

ever, "legislative history should be used to resolve ambiguity, not create it." *In re Roberts,* 906 F.2d at 1442. *See also Trustees of Iron Workers Loc. 473 Pension Trust v. Allied Products Corp.,* 872 F.2d 208, 213 (7th Cir.1989)

("Courts should only reluctantly turn to legislative history for fear of upsetting the delicate balance reflected in a finally worded piece of legislation").

Torres' request to impose sanctions on the IDR is denied.

## CONCLUSION

By separate order, the Court enters final judgment in accord with the foregoing.