In re Paul W. WINCHELL, Debtor.

Paul W. WINCHELL, Plaintiff,

v.

TOWN OF WILMINGTON, Defendant.

Bankruptcy No. 90–12887–CJK.

United States Bankruptcy Court,
D. Massachusetts.

Sept. 18, 1996.

Nina M. Parker, Boston, MA, for Debtor.

Jeffrey A. Schreiber, Danvers, MA, James E. Coppola, Jr., Marblehead, MA, for Town of Wilmington.

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

CAROL J. KENNER, Bankruptcy Judge.

By his complaint in this adversary proceeding, the Plaintiff and Debtor, Paul Winchell, seeks a determination that the Defendant, the Town of Wilmington, Massachusetts, is not entitled to postpetition interest on its prepetition claim for real estate taxes. Pursuant to his confirmed plan of reorganization, under which the Debtor was obligated to pay the Town's priority tax claim in full, the Debtor has paid the amount that was due on the date of his bankruptcy filing. He now seeks a determination that no further amount is due. The Town has responded with a counterclaim, by which it seeks a declaration that the Debtor remains obligated for postpetition interest on the claim and that confirmation of the Debtor's plan did not extinguish the Town's statutory lien for such interest.

The adversary proceeding is before the Court on the parties' cross motions for summary judgment. For the reasons set forth below, the Court holds that confirmation of the plan did extinguish the Town's lien and that the Debtor's personal liability for postpetition interest on the tax has been discharged.

## FACTS

The parties have submitted a joint stipulation of undisputed facts in support of these cross motions. The facts set forth therein, which are the only facts of which the Court has evidence, are as follows.

The Debtor has at all relevant times owned one hundred percent of the beneficial interest in Wilfab Associates Trust, a Massachusetts nominee trust. The trust owns the real estate located at 235 Andover Street, Wilmington, Massachusetts ("the property"). During fiscal year 1990, which includes the period between July 1, 1989, and June 30, 1990, the Debtor himself held legal title to the property. On June 4, 1990, when the Debtor filed his petition for relief under Chapter 11 of the Bankruptcy Code, the Debtor was indebted to the Town for real estate taxes on the property in the amount of $52,901.51. This amount was due and payable on May 1, 1990, and constituted the final installment of the real estate taxes for fiscal year 1990. This tax had been assessed to the Debtor for the property on or about January 1, 1989. At the time of the bankruptcy filing, the property had a value of $1.2 million.

The Town received notice from the Bankruptcy Court of the Debtor's Chapter 11 filing. Despite repeated requests from the Debtor to do so, the Town did not file a proof of claim for real estate taxes.

On July 19, 1993, the Debtor filed an Amended Plan of Reorganization in his Chapter 11 case. In relevant part, the plan provided:

The claims of governmental taxing authorities and of those claimants having priority under Section 507(a)(6) [sic] of the Bankruptcy Code shall be [p]aid in full by the Debtor on the Effective Date.... The Town of Wilmington is owed the sum of $52,901.51 for real estate taxes.

Debtor's Amended Plan of Reorganization, Article IV. The plan also provided:

As of the Confirmation, the property of the estate created under Section 541 of the Bankruptcy Code shall be vested in Paul W. Winchell individually and Wilfab Associates Trust free and clear of any and all claims except as otherwise provided herein or in the order of the Bankruptcy Court confirming the Plan.

Debtor's Amended Plan of Reorganization, Article XIII, ¶ 13.2. Copies of the Amended Plan and of the Disclosure Statement filed in support thereof were served on the Town on or about September 10, 1993, but the Town filed no objection to the plan.

On October 21, 1993, the Court entered an order confirming the Amended Plan of Reorganization. In relevant part, the Confirmation Order provided:

15. The property of the estate of Winchell created under Section 541 of the Code shall be, and hereby is, vested in Winchell and all property of Winchell, including the aforesaid property of the estate, shall be held by Winchell free and clear of all claims, liens, and encumbrances, except as otherwise provided in the Plan.

.    .    .    .    .

17. Except as expressly provided in the Plan, the Debtor shall be, and hereby is, discharged from any claims or debts, as defined in Section 101(5) and Section 101(12) of the Bankruptcy Code, that arose before the date of this order and any debt or claim of a kind specified in Section 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not a proof of claim based on such debt was filed or deemed filed under Section 501 of the Bankruptcy Code, or such claim was allowed under Section 502 of the Bankruptcy Code or the holder of such claim has accepted the Plan.

Confirmation Order, ¶¶ 15 and 17.

On or about November 1, 1993, the effective date of the plan, the Debtor tendered a certified check to the Town in the sum of $52,901.51 for payment of the Town's claim for prepetition real estate taxes. The Town accepted the payment, but, by letter dated November 16, 1993, took the position that the Debtor remained obligated for an additional $26,758.28, representing postpetition interest on the claim.

On December 30, 1993, the Debtor filed his Application for Final Decree after Consummation of Reorganization and served the application on all creditors. Wilmington filed no objection to the application, and, on January 18, 1994, the Court entered the Final Decree. In the Final Decree, the Court ordered and decreed that

Paul W. Winchell d/b/a Wilfab Associates Trust, the Debtor, be, and it hereby is, discharged from all of its unsecured debts and liabilities provided for by the Plan of Reorganization, except as provided in the Plan of Reorganization or the Order confirming the Plan of Reorganization, but

excluding such debts as, under the Bankruptcy Code[,] are not dischargeable. Final Decree After Consummation of Proceedings.

On or about August 26, 1994, the Town notified the Debtor that it intended to publish a notice of tax taking with respect to the property on August 31, 1994, to recover the postpetition interest on the prepetition tax claim. On August 31, 1994, the Town published a lien for the postpetition interest.

## DISCUSSION

On a motion for summary judgment, the judgment sought shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). In this instance, the parties have agreed as to the material facts. The Court need only decide, on the agreed facts, which party is entitled to judgment as a matter of law. The adversary proceeding presents two discreet issues: whether the Town's prepetition lien survived confirmation of the plan of reorganization; and, if the lien did not survive, whether confirmation of the plan extinguished the Debtor's personal liability for postpetition interest on the claim.

### a. *Effect of Confirmation on Lien*

■ Under Massachusetts law, "taxes assessed upon land ... shall with all incidental charges and fees be a lien thereon from January first in the year of assessment." G.L. c. 60, § 37. Accordingly, when the Debtor commenced his bankruptcy case, the Town had a statutory lien on the property to secure payment not only of the taxes but also of "all incidental charges," including interest. The Debtor argues that this lien was extinguished upon confirmation of the plan by the confirmation order itself and by operation of 11 U.S.C. § 1141(a) and (c). Citing *Matter of Penrod*, 50 F.3d 459 (7th Cir.1995), the Town responds that the confirmation of a plan of reorganization cannot extinguish a lien whose holder, like the Town, did not participate in the reorganization—by filing a proof of claim or otherwise—and thus agree to allow its rights to be altered.

■ The Court begins with § 1141(c) of the Bankruptcy Code. It states:

Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c). Subject to exceptions, this subsection creates a general rule that, upon confirmation, the property dealt with in the plan is free and clear of all claims and interests of creditors, including liens. 11 U.S.C. § 101(37) (defining "lien" as "interest in property to secure payment of a debt"); *Matter of Penrod*, 50 F.3d at 463 ("interest" as used in § 1141(c) includes liens). Notably, the rule applies not to all property owned by the Debtor or by the estate but only to "the property dealt with by the plan."

The Town argues, by reference to *Penrod*, that where the Town did not file a claim in this case and the plan was silent as to its lien, the lien is not "property dealt with by the plan," such that the default rule of § 1141(c) does not apply, and its lien passed through bankruptcy unaffected. In *Penrod*, the Seventh Circuit Court of Appeals was asked to determine the effect of confirmation upon a creditor's lien as to which the plan and the order confirming it were silent but for which the creditor had filed a proof of claim. The Seventh Circuit held that, by operation of § 1141(c), a lien as to which the plan is silent is deemed extinguished. *Matter of Penrod*, 50 F.3d at 462–463. However, the court explained that this default rule applied only because the lien creditor had filed a claim and thus participated in the reorganization. In *dicta*, the court stated that had the creditor not filed a claim, "his lien would not be 'property dealt with by the plan,' and so the section [§ 1141(c)] would not apply." *Matter of Penrod*, 50 F.3d at 463. Consequently, confirmation of the plan would have left the lien intact and unaffected. *Matter of Penrod*, 50 F.3d at 463 ("liens pass through bankruptcy unaffected ... unless they are brought into the bankruptcy proceeding and dealt with there").

It is this *dicta* that the Town urges the Court to accept as dispositive with respect to the effect of confirmation on its lien. However, in so arguing, the Town overlooks an important difference between this case and the facts to which the *dicta* was addressed. In both its holding and its *dicta*, *Penrod* was governed by the general rule of § 1141(c). But the general rule was subject to an exception for contrary provisions in the plan or the order confirming it. 11 U.S.C. § 1141(c) ("except as otherwise provided in the plan or in the order confirming the plan, . . . ."). Insofar as the plan and confirmation order are contrary to the general rule, they displace the general rule and govern.

This case is governed by the exception. The confirmed plan provided:

As of the Confirmation, the property of the estate created under Section 541 of the Bankruptcy Code shall be vested in Paul W. Winchell individually and Wilfab Associates Trust free and clear of any and all claims except as otherwise provided herein or in the order of the Bankruptcy Court confirming the Plan.

Debtor's Amended Plan of Reorganization, Article XIII, ¶ 13.2. And, in paragraph 15, the confirmation order provided:

The property of the estate of Winchell created under Section 541 of the Code shall be, and hereby is, vested in Winchell and all property of Winchell, including the aforesaid property of the estate, shall be held by Winchell free and clear of all claims, liens, and encumbrances, except as otherwise provided in the Plan.

These provisions are contrary to the general rule in that they extend the scope of the default rule beyond that specified in § 1141(c), which reaches only "property dealt with by the plan." Under the plan and the confirmation order, the default rule encompasses (at least) all property of the Debtor's estate. Being in that respect contrary to the general rule of § 1141(c), the confirmed plan and the confirmation order displace the general rule and govern. The Town does not dispute that the property at issue belonged to the Debtor at the commencement of the case and, pursuant to 11 U.S.C. § 541(a)(1), became an asset of his bankruptcy estate. *In re Eastmare Development Corp.*, 150 B.R. 495, 498–503 (Bankr.D.Mass.1993) (where

debtor owns entire beneficial interest in nominee trust, the *res* is deemed property of his bankruptcy estate). Therefore, by virtue of the above language from the plan and from the order confirming it, the Town's lien has been extinguished.

■ The fact that the Debtor did not file a proof of claim in the case does not change this result. With certain exceptions not applicable here, the provisions of a confirmed plan bind any creditor, regardless of whether or not they have filed claims or otherwise participated in the case. 11 U.S.C. § 1141(a).[1] The Court concludes that the Debtor is entitled to judgment as a matter of law as to the continued validity of the statutory lien: the lien was extinguished upon confirmation of the plan.

### b. *Personal Liability for Postpetition Interest on Tax Claim*

The second issue is whether the confirmed plan extinguished the Debtor's personal liability for postpetition interest on the prepetition tax claim. The Town argues that no liability was extinguished because, under § 1141(d)(2), the confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under § 523, which, the Town argues, includes the debt for interest on the Town's prepetition claim for real estate taxes. 11 U.S.C. §§ 1141(d)(2), 523(a)(1)(A), and 507(a)(8)(B). Citing *In re Heisson*, 192 B.R. 294 (Bankr.D.Mass.1996), the Debtor responds that § 1141(d)(2) does not apply to a plan that pays a one hundred percent dividend on the tax claim; that a "debt" excepted from discharge under § 523(a)(1) does not, under the Bankruptcy Code, include postpetition interest; and that, under the Code, postpetition interest is simply disallowed, "a casualty of bankruptcy."

*Id.* at 296. He also argues that only prepetition interest on an unsecured tax claim can have priority under § 507(a)(8)(B) and thus fall within the scope of claims excluded from discharge by § 523(a)(1)(A).

■ Putting aside for the moment the issue of whether § 1141(d)(2) applies in this case, the Court will first determine whether the tax at issue, and the interest thereon, falls within the exception from discharge set forth at 523(a)(1)(A). In relevant part, section 523(a)(1)(A) provides:

> A discharge under section ... 1141 ... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed.

11 U.S.C. § 523(a)(1)(A). The Town contends that its tax is of the kind and for the period specified in § 507(a)(8)(B): "a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(B). The tax at issue fits this description: it is a property tax; it was assessed on or about January 1, 1989, a date before the commencement of the case; and, having been due on May 1, 1990, it was last payable without penalty after one year before the filing of the petition. Thus the tax itself is of the kind and for the period specified in § 507(a)(8)(B). Accordingly, it falls within the scope of debts excepted from discharge under § 523(a)(1)(A). And the same is true of postpetition interest on the tax.[2]

Section 1141(d)(2) provides simply that "[t]he confirmation of a plan does not dis-

---

**1.** In relevant part, § 1141(a) provides:

Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind ... any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.

11 U.S.C. § 1141(a).

**2.** *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) (under former Bankruptcy Act, postpetition interest on undischarged

tax debt remained a personal liability of the debtor after bankruptcy); *In re Hanna,* 872 F.2d 829, 830–831 (8th Cir.1989) (under present Bankruptcy Code, postpetition interest on nondischargeable taxes is nondischargeable); *In re Burns,* 887 F.2d 1541, 1543 (11th Cir.1989) (same); *In re Stahly,* 117 B.R. 410, 413–414 (Bankr.N.D.Ind.1989) (same); and *In re Torres,* 143 B.R. 183, 187 (Bankr.N.D.Ill.1992) (interest on tax is discharged only if the underlying tax is discharged).

charge an individual debtor from any debt excepted from discharge under § 523 of this title." 11 U.S.C. § 1141(d)(2). By the plain and categorical language of this provision, postpetition interest on a prepetition tax claim that falls within section 523(a)(1)(A) should be excepted from discharge. However, in *Heisson*, Judge Queenan disagreed on two grounds: this conclusion renders § 1129(a)(9)(C) meaningless; and, in any case, § 1141(d)(2) excepts from discharge only a "debt," which is a liability on a claim, which, as against an insolvent estate, cannot include postfiling interest. 11 U.S.C. § 502(b)(2).

This Court respectfully disagrees as to the latter argument because it overlooks the distinction between "claims" and "allowed claims." Under sections 1141(d)(2) and 523(a), certain "debts" are excepted from discharge. 11 U.S.C. §§ 523(a) and 1141(d)(2). Debt is defined as "liability on a claim," 11 U.S.C. § 101(12), and claim is defined as "right to payment, whether or not such right is ... matured [or] unmatured." 11 U.S.C. § 101(5)(A). It is true that under § 502(b)(2) of the Code, the Court must deny any claim (or portion thereof) for interest not matured as of the date on which the bankruptcy case was commenced, such that no creditor can have an "allowed claim" for postpetition interest. 11 U.S.C. § 502(b)(2). But sections 1141(d)(2) and 523(a) do not limit their exceptions from discharge to "allowed claims," a term that the drafters of the Code used where they saw fit. See, for example, 11 U.S.C. §§ 726(a) and 1129(b)(2). Rather, the exceptions from discharge extend to "debts," which are defined as rights to payment, "whether matured or unmatured." [3] Moreover, § 523(a)(1)(A) expressly states that claims of the kind and for the periods specified in § 507(a)(8) are excepted from discharge "whether or not a claim for such tax was filed *or allowed.*" 11 U.S.C. § 523(a)(1)(A) (emphasis added). Therefore, the Court does not read § 502(b)(2) as a limitation on the exceptions from discharge and, accordingly, rejects this argument as a basis for the holding in *Heisson*.

That holding is better supported by *Heisson*'s first argument alone. The first argument—that 1141(d)(2) cannot apply to priority taxes that the debtor pays in accordance with 1129(a)(9)(C) without rendering the latter section meaningless—is based on an apparent conflict between § 1141(d)(2) and § 1129(a)(9)(C). Under § 1129(a)(9)(C) of the Bankruptcy Code, a Chapter 11 plan must provide, with respect to each tax claim specified in § 507(a)(8) of the Code, for cash payments of a value, as of the effective date of the plan, equal to the full allowed amount of the claim.[4] Section 1129(a)(9)(C) pertains to claims—those of the kind and for the periods specified in § 507(a)(8)—that, as against individual debtors, sections 1141(d)(2) and 523(a)(1)(A) except from discharge, even to the extent of postpetition interest. Yet by § 1129(a)(9)(C), the Code requires payment of only the "allowed amount of the claim," which, under § 502(b)(2), clearly excludes postpetition interest.

Can § 1129(a)(9)(C) and § 1141(d)(2) be reconciled? Judge Queenan took the position that they could not, that § 1141(d)(2) cannot apply to a tax claim as to which the Debtor has made payment to the extent required by § 1129(a)(9)(C) without rendering the latter section meaningless:

Section 1141(d)(2) does not apply to a plan ... which pays a 100% dividend.... To

---

**3.** Moreover, although § 502(b)(2) requires that claims for postpetition interest be "disallowed," the term is inaccurate. Under § 726(a)(5), unsecured creditors are entitled to postpetition interest on their claims, provided the estate has sufficient assets to first pay all claims of higher priority. 11 U.S.C. § 726(a). In effect, creditors' rights to postpetition interest are merely subordinated.

**4.** *Section 1129(a)(9)(C) provides as follows:*

(a) The court shall confirm a plan only if all of the following requirements are met:

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(C).

treat section 1141(d)(2) as trumping section 1129(a)(9)(C) would make the latter section meaningless. Section 1141(d)(2) must, therefore, be construed to refer only to the unpaid portion of a claim under a plan paying less than a 100% dividend.

*In re Heisson,* 192 B.R. at 296.

This Court agrees. Section 1129(a)(9)(C) is quite specific as to the treatment that a Debtor must afford priority tax claims in order to obtain confirmation of its plan. Moreover, it requires that, if such claims are not to be paid in full on the effective date of confirmation,[5] the Debtor must pay interest on the claim at whatever rate will ensure that the entire stream of payments on the claim, when discounted to present value (as of the effective date of the plan), is equal in value to the allowed amount of the claim. This effectively requires that the Debtor pay postconfirmation interest on the allowed amount of the claim from the effective date of confirmation. In view of the specificity of § 1129(a)(9)(C), of the fact that it expressly requires payment of interest on the claim, and of the fact that it specifies what interest is required, the Court must conclude that Congress meant thereby to prescribe what would be required for satisfaction of priority tax claims, such that any further liability for interest on such claims must be deemed discharged. Therefore, where the Debtor pays a priority tax claim pursuant to and in accordance with a confirmed chapter 11 plan that conforms to § 1129(a)(9)(C), the Debtor's liability on the claim is satisfied, and any remaining liability for interest on the claim is deemed discharged.

In this case the Debtor paid the full allowed amount of the claim on the effective date of the plan. This was all that the plan required, and the plan thus afforded the Town all that was due it under § 1129(a)(9)(C). The Court concludes that the Debtor's personal liability for postpetition interest on the prepetition tax claim has been discharged.

5. Section 1129(a)(9)(C) permits debtors to pay these claims over a period extending not longer

*CONCLUSION*

For the reasons set forth above, judgment will enter for the Debtor as to the continued validity of the Town's statutory lien and as to his personal liability for postpetition interest on the debt.

than six years from the date of assessment.