**In re Richard Eugene GROETKEN, Debtor.**

**Richard Eugene GROETKEN, Plaintiff–Appellant,**

**v.**

**STATE OF ILLINOIS, DEPARTMENT OF REVENUE, Defendant–Appellee.**

**No. 86–3066.**

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1987.

Decided April 1, 1988.

Paul H. Lauber, Farrell & Long, P.C., Godfrey, Ill., for debtor.

Lynn M. Travis, Asst. Atty. Gen., Springfield, Ill., for defendant-appellee.

Before RIPPLE and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.*

MANION, Circuit Judge.

Richard Groetken appeals the district court's decision that a judgment against him under the Illinois Retailer's Occupation Tax Act was not discharged in bankruptcy. We reverse.

## I.

The facts in this case are not in dispute. During the years 1979 and 1980, Richard Groetken was an officer of Pizza John's, Inc. Pizza John's operated a restaurant in Alton, Illinois that was subject to the Illinois Retailer's Occupation Tax Act ("Occupation Tax Act"), Ill.Rev.Stat. ch. 120, ¶¶ 440–453 (1985).[1] Pizza John's Occupation Tax obligations to the State were left unpaid during those years. In September, 1981, the State of Illinois, Department of Revenue ("the State") sued Groetken in state court to recover the unpaid Occupation Tax. The suit alleged that Groetken was personally liable for the unpaid taxes under a provision of the Occupation Tax Act that allowed the State to collect a "penalty" equal to the amount of unpaid

---

* Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, sitting by designation.

1. Between the time when Groetken's liabilities arose and the filing of the instant proceeding in 1985, there were several amendments to the Occupation Tax Act and the Use Tax Act. The parties apparently believe the amendments to be

irrelevant and have argued the case solely in terms of the 1985 versions of the statutes. Thus, we examine the issues solely under the 1985 versions. We further note that these statutory provisions have also been amended in the time period since Groetken commenced this proceeding.

tax against a responsible corporate officer who willfully failed to pay the corporation's Occupation Tax. *See* Ill.Rev.Stat. ch. 120, ¶ 452½ (1985).

On January 7, 1982, judgment in the amount of $6,858.19 was entered against Groetken pursuant to a stipulation by the parties. Groetken and the State stipulated that Groetken would be allowed to pay off the judgment in monthly installments.

After making payments on the judgment totaling approximately $1,875.00, Groetken stopped paying the State. The State then initiated proceedings to discover Groetken's assets. This prompted Groetken to file a Chapter 7 bankruptcy petition on May 24, 1984. On September 6, 1984, Groetken received a Chapter 7 discharge. The bankruptcy court's order discharged Groetken of all "debts dischargeable under 11 U.S.C. § 523." Since his discharge, Groetken has made no payments on the State's 1982 judgment against him.

On July 10, 1985, the State initiated further proceedings in state court to collect the 1982 judgment. This prompted Groetken to file a "Complaint by Debtor to Determine Dischargeability of a Debt—Illinois Retailers' Occupation Tax" in the United States Bankruptcy Court for the Southern District of Illinois. Groetken claimed that the bankruptcy court had discharged his obligations under the 1982 judgment. After a brief hearing, the bankruptcy court ruled against Groetken. The bankruptcy court held that the judgment under the Occupation Tax Act was, in substance, a non-dischargeable judgment for taxes Groetken collected under the Illinois Use Tax Act ("Use Tax Act"), Ill.Rev.Stat. ch.

120, ¶¶ 439.1–439.22 (1985). *See In re Rosenow,* 715 F.2d 277, 280–82 (7th Cir.1983) (obligations under the Use Tax Act never dischargeable in bankruptcy). Groetken appealed the bankruptcy court's order to the district court. The district court affirmed.

## II.

A discharge under 11 U.S.C. § 727 does not discharge an individual debtor from tax debts "of the kind and for the periods specified in ... [11 U.S.C. § 507(a)(7)], whether or not a claim for such tax was filed or allowed."[2] 11 U.S.C. § 523(a)(1)(A). Among the taxes listed in § 507(a)(7) are taxes "on or measured by ... gross receipts" that became due within three years before the filing of the bankruptcy petition, 11 U.S.C. § 507(a)(7)(A) ("Section A") and excise taxes on a transaction that became due within three years before filing the bankruptcy petition, 11 U.S.C. § 507(a)(7)(E) ("Section E"). Thus, excise taxes and taxes on or measured by gross receipts are dischargeable if they became due more than three years before the filing of the bankruptcy petition. *See Rosenow,* 715 F.2d at 279.

Some taxes are not dischargeable regardless of when they became due. Taxes that are "required to be collected or withheld and for which the debtor is liable in whatever capacity" are never dischargeable. 11 U.S.C. § 507(a)(7)(C) ("Section C"); *see Rosenow,* 715 F.2d at 279. Section C covers the "so-called 'trust fund' taxes, that is, income taxes which an employer is required to withhold from the pay of his employees,

**2.** 11 U.S.C. § 507(a)(7) provides in relevant part:
(a) The following expenses and claims have priority in the following order:
\* \* \* \* \* \*
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
\* \* \* \* \* \*

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
\* \* \* \* \* \*
(E) an excise tax on—
(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;
\* \* \* \* \* \*
(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

the employees' share of social security and railroad retirement taxes, and ... Federal unemployment insurance," S.Rep. No. 95–989, 95th Cong.2d Sess. 71 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5857, as well as other taxes that a person is required to collect and hold on behalf of a governmental unit, *see Rosenow*, 715 F.2d at 279–80. *See also In re Shank*, 792 F.2d 829 (9th Cir.1986). For ease of reference, we will refer to all taxes falling under Section C as "trust fund" taxes.

Here, the sole issue raised on appeal is how the State's claim under the Occupation Tax Act should be characterized under § 507(a)(7).[3] Groetken and the State agree that Groetken's Occupation Tax obligations became due more than three years before he filed his bankruptcy petition. However, Groetken argues that the Occupation Tax is either a gross receipts tax falling under Section A or an excise tax falling under Section E. Under either Section A or Section E, his Occupation Tax obligations would be discharged because they became due more than three years before he filed his bankruptcy petition. The State argues that its claim under the Occupation Tax Act is in reality a non-dischargeable claim for the money Groetken was required to collect from purchasers under the Use Tax Act.

The Illinois taxation scheme commonly referred to as the Illinois "sales" tax actually consists of two complementary statutes—the Occupation Tax Act and the Use Tax Act. The Occupation Tax Act imposes a "tax ... upon persons engaged in the business of selling tangible personal property at retail at the rate of 5% of the gross receipts from such sales of tangible personal property made in the course of such business...." Ill.Rev.Stat. ch. 120 ¶ 441 (1985). This tax is imposed directly on retailers.

To insure that the tax is paid the Act contains a detailed registration, filing, and enforcement scheme. *See generally* Ill. Rev.Stat. ch. 120, ¶¶ 442–451 (1985). As noted earlier, the Occupation Tax Act also allows the State to hold an officer of a corporation "personally liable to a penalty equal to" the amount of a corporation's unpaid tax if the officer "has the control, supervision or responsibility of filing returns and making payment" of the tax and willfully fails to pay the tax. Ill.Rev.Stat. ch. 120, ¶ 452½ (1985). Furthermore, the Act contains criminal penalties for, among other things, failing to file returns and filing fraudulent returns. Ill.Rev.Stat. ch. 120, ¶ 452 (1985).

The Occupation Tax Act is complemented by the Use Tax Act. The Use Tax Act imposes a 5% use tax "upon the privilege of using in this State tangible personal property ... purchased at retail from a retailer." Ill.Rev.Stat. ch. 120, ¶ 439.3 (1985). Illinois enacted the Use Tax Act to protect its retailers from the diversion of business to out-of-state retailers and to prevent evasion of the Occupation Tax. *See Klein Town Builders, Inc. v. Department of Revenue*, 36 Ill.2d 301, 222 N.E.2d 482, 484 (1966); *Turner v. Wright*, 11 Ill.2d 161, 142

---

**3.** Although Groetken was held liable for a tax "penalty," he does not argue that the "penalty" was not a "tax" falling under Section C. Section C specifically refers to taxes required to be collected and "for which the debtor is liable in whatever capacity." The Joint Statement of the floor leaders, Senator DeConcini and Representative Edwards, makes clear that Congress placed the quoted language into Section C to achieve the same result the Supreme Court reached in *United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (holding that the collection of tax revenue under the label of a "tax penalty" against a responsible corporate officer constituted the collection of a "tax" within the meaning of the predecessor statute to Section C). *See* 124 Cong.Rec. 34,015 (Senate) *reprinted in* 1978 U.S.Code Cong. &

Admin.News 5787, 6505, 6566; 124 Cong.Rec. 32,415–16 (House), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6436, 6497; *cf.* 11 U.S.C. § 507(a)(7)(G) (pecuniary loss tax penalties are treated the same as a claim for the underlying tax).

We also note that Groetken does not argue that the "tax penalty" assessed against him is dischargeable under 11 U.S.C. § 523(a)(7) and that the State has not raised any arguments concerning the non-dischargeability of tax claims under 11 U.S.C. § 523(a)(1)(C) (relating to tax fraud and tax evasion). The State did originally claim as an affirmative defense in its answer in bankruptcy court that Groetken's tax liability was not dischargeable under 11 U.S.C. § 523(a)(1)(C) but subsequently deleted that affirmative defense from its answer.

N.E.2d 84, 87, *appeal dismissed,* 355 U.S. 65, 78 S.Ct. 140, 2 L.Ed.2d 106 (1957). The Use Tax Act applies to retail purchases made in-state as well as purchases made out-of-state. *See id.* Retailers are required to collect Use Tax from purchasers. Ill.Rev.Stat. ch. 120, ¶ 439.3. Like the Occupation Tax Act, the Use Tax Act contains a detailed registration, filing, and enforcement scheme. *See* Ill.Rev.Stat. ch. 120, ¶¶ 439.6–439.15 (1985). It also incorporates by reference many of the Occupation Tax Act's enforcement provisions, including the provision that allows the State to collect a penalty from responsible corporate officers. *See* Ill.Rev.Stat. ch. 120, ¶ 439.12 (1985).

Fortunately for Illinois retailers and consumers, the Occupation Tax and the Use Tax are not imposed cumulatively. The Use Tax Act expressly relieves a retailer from remitting any Use Tax it collects if the retailer pays the Occupation Tax. *See* Ill.Rev.Stat. ch. 120, ¶¶ 439.8 and 439.9 (1985). Moreover, although the Occupation Tax Act does not contain a similar provision, the Illinois Court of Appeals has indicated that a retailer who pays the Use Tax does not have to pay the Occupation Tax. *See Department of Revenue v. Steinkopf,* 160 Ill.App.3d 1008, 112 Ill.Dec. 407, 410, 513 N.E.2d 1016, 1019 (1st Dist.1987), *appeal denied,* 118 Ill.2d 542, 117 Ill.Dec. 223, 520 N.E.2d 384 (1988). "Therefore, although there are two taxes actuated by the same sale and purchase, only one of the two payments is remitted to the State, and the single payment satisfies both taxes." *Id.*

### III.

This circuit addressed the discharge in bankruptcy of a retailer's obligations under this unusual tax scheme in *In Re Rosenow,* 715 F.2d 277 (7th Cir.1983). In *Rosenow,* two retailers sought to discharge their obligations under the Occupation Tax Act and the Use Tax Act. The bankruptcy court discharged the Occupation Tax claims but granted judgment against the retailers on the Use Tax claims. The bankruptcy court held that the Use Tax was a non-dischargeable "trust fund" tax.

On appeal to this circuit, the debtors' sole challenge was that the Use Tax is not a "trust fund" tax. Even though retailers are required to collect the Use Tax, the debtors argued that the "trust fund" provisions of the Bankruptcy Code applied only to "traditional trust fund taxes" (*e.g.,* withheld income taxes) and not to "excise" taxes that are required to be collected. Relying on the statutory language and the legislative history, the court rejected this argument:

> [T]here are really two types of sales tax liabilities ...: those which are owed personally by a debtor, for example, on purchases he himself has made, and those incurred by a retailer's customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state. In relation to the latter, the retailer in fact appears to be holding for the benefit of the state taxes which his customers would otherwise owe—an obvious similarity to the income and social security taxes ('trust fund taxes') which are unquestionably covered by Section C.

715 F.2d at 280.

The debtors also argued that the State's Use Tax Act claim should be ignored because it is merely a "fiction" used to ensure collection of the Occupation Tax, a tax that is not required to be collected. In support of this argument the debtors contended: (1) that the Use Tax was enacted to prevent evasion of the Occupation Tax and to prevent diversion of business to out-of-state retailers; (2) that the Use Tax was applied to in-state sales only because of "uniformity" requirements contained in the Illinois Constitution; and, (3) that, as a practical matter, Use Tax was only paid on out-of-state purchases because the payment of the Occupation Tax relieved retailers of the obligation of paying Use Tax.

The court did not take issue with the debtors' contentions concerning the history and relationship of the statutes. Nonetheless, the court concluded that the complementary nature of the statutes did not

warrant treating a Use Tax claim as, in substance, a claim for Occupation Tax. In part, the court reasoned:

It is true ... that the taxes paid under the two acts are more similar in their substance than different. Both are in fact paid by retailers to the State of Illinois with monies collected by adding 4% [now 5%] to the price of every retail sale. Yet the Occupation Tax is in form a gross receipts tax, levied on the retailer rather than on the purchaser, and as such presumably dischargeable under 11 U.S.C. § 507(a)(6)(A) [now codified at 11 U.S.C. § 507(a)(7)(A)]. At any rate, the parties before us have apparently agreed that obligations under the Occupation Tax Act are dischargeable, so that we need not consider whether the substance of the Occupation Tax is not equally that of a sales tax collected by the retailer from the customer and held in trust for the state.

However, even accepting as given the real similarity of the two taxes and the dischargeability of obligations under the Occupation Tax Act, appellants' conclusion that the Use Tax must be dischargeable in bankruptcy does not follow. The history and relationship of the two acts may be informative about problems created by the uniformity requirement of the Illinois Constitution and the economics of retail sales, but they do not control how obligations under the two laws are to be treated in bankruptcy.

*Id.* at 281–82 (footnote omitted). The court then noted that the retailers remained liable for the Use Tax because they failed to pay the Occupation Tax. Because the Use Tax Act requires retailers to collect the tax from the purchasers, the court then concluded that the retailers remained liable for non-dischargeable "trust fund" taxes.

Thus, while *Rosenow* indicated in *dicta* that the Occupation Tax is "in form a gross receipts tax ... presumably dischargeable under [Section A]," it expressly left open the question presented in this matter. A recent decision of the Illinois Court of Appeals (decided subsequent to oral argument), however, has specifically addressed how the Occupation Tax should be treated in bankruptcy. In *Department of Revenue v. Steinkopf,* 160 Ill.App.3d 1008, 112 Ill.Dec. 407, 513 N.E.2d 1016 (1st Dist. 1987), the State of Illinois brought suit in State court claiming that the defendant, a retailer who had received a discharge in bankruptcy, was liable for unpaid Occupation Tax that had become due less than three years before the defendant's bankruptcy had been filed. The defendant moved to dismiss on the ground that his Occupation Tax liabilities had been discharged. The trial court held that the Occupation Tax claim had not been discharged and subsequently entered judgment on behalf of the State.

On appeal, the Illinois Court of Appeals had to decide whether the defendant's Occupation Tax liability was nondischargeable as a "trust fund" tax under Section C, a gross receipts tax under Section A, or as an excise tax under Section E. Because the defendant's tax obligations became due less than three years before he filed his bankruptcy petition, his tax obligations were not dischargeable if they fell under any of those provisions. The court summarily rejected the State's argument that the Occupation Tax was a "trust fund" tax. The court reasoned that the Occupation Tax was not a "trust fund" tax because retailers are not required to collect the Occupation Tax. The court also stated that the Occupation Tax did not fall under Section A. The court did not rest this conclusion on the ground that the Occupation Tax was not "on or measured by ... gross receipts." Rather, it concluded that Section A applied only to income taxes. Specifically rejecting contrary dicta in *Rosenow,* the court stated:

Case law consistently indicates that [Section A] relates only to certain income tax obligations. (*In re Bradley* (Bkrtcy.Md. 1984), 36 B.R. 655, 655–56; *In re Kisich* (9th Cir.BAP 1983), 28 B.R. 401, 403; *In re Massoni* (Bkrtcy.Kan.1982), 20 B.R. 416, 419.) The Occupation Tax is indisputably not an income tax, but is instead a 'tax on the occupation of making retail sales in the State.' *Velde Ford Sales v. Illinois Department of Revenue* (1985),

136 Ill.App.3d 589, 590, 91 Ill.Dec. 375, 483 N.E.2d 721.

513 N.E.2d at 1021.

The court then concluded that the Occupation Tax fell under Section E. According to the court, the Occupation Tax fell under the definition of an excise tax as " 'a tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege,' or a '[t]ax laid on manufacture, sale, or consumption of commodities....' " *Id.* (quoting Black's Law Dictionary 506 (5th ed. 1979)). The court also relied on the Illinois Supreme Court's previous characterization of the Occupation Tax " 'an excise or occupation tax.' " *Id.* (quoting *People's Drug Shop v. Moysey,* 384 Ill. 283, 286, 51 N.E.2d 144 (1943)). Having concluded that the Occupation Tax was an excise tax under Section E that became due less than three years before the debtor filed his bankruptcy petition, the court affirmed the trial court's ruling that the defendant's Occupation Tax liabilities were not discharged.

### IV.

■ Although *Steinkopf* addresses the proper characterization of the Occupation Tax under the Bankruptcy Code, it does not relieve us of our independent obligation to examine whether the Occupation Tax falls under the "trust fund" provisions of Section C. The Bankruptcy Code "is a Federal statute; the ultimate interpretation of which is in the Federal courts." *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 140, 51 L.Ed. 284 (1906); *see also City of New York v. Feiring,* 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941). This is not to say that a state court's construction of state statutes does not play an important role in determining how a debtor's liabilities will be characterized under the Bankruptcy Code. In applying the various code provisions, the federal courts look to state law to determine the exact nature of a person's rights and obligations under state law. *See id.; see also In re Adams,* 40 B.R. 545, 547 (E.D.Pa. 1984) ("[A]lthough federal law governs what constitutes a 'tax,' how the state

treats [a] charge may dictate the ultimate result."). Applying the Bankruptcy Code to those rights and obligations, however, is ultimately a question of federal law.

Under Section C's plain language, the Occupation Tax is not a "trust fund" tax. The Occupation Tax is imposed directly upon retailers. It is an obligation for which the retailer is solely accountable to the State. Unlike the Use Tax, retailers are not required to collect the tax from purchasers and, in turn, pay the taxes collected to the State. Rather, as a tax on the retailers themselves that is "on or measured by ... gross receipts," the Occupation Tax falls squarely under Section A. Because Groetken's Occupation Tax obligations became due more than three years before he filed his bankruptcy petition, they are dischargeable under that section.

■ We recognize that the Illinois Court of Appeals stated in *Steinkopf* that the Occupation Tax did not fall under Section A because Section A applies only to income taxes. We disagree with that conclusion. Section A unambiguously applies to income taxes *and* gross receipts taxes. Neither the statute nor the legislative history indicates that Congress did not mean what it said when it placed gross receipts taxes alongside income taxes in Section A. Moreover, *Steinkopf*'s reliance on the authorities it cited as indicating that only income taxes fall under Section A was misplaced. Although all the authorities cited in *Steinkopf* dealt with the dischargeability of income taxes, none of them indicated that *only* income taxes fell under Section A. *See In re Bradley,* 36 B.R. 655 (Bankr. D.Md.1984); *In re Kisich,* 28 B.R. 401 (9th Cir.BAP 1983); *In re Massoni,* 20 B.R. 416 (Bankr.D.Kan.1982).

■ Although we disagree with *Steinkopf*'s conclusion that gross receipts taxes do not fall under Section A, we do not disagree with its conclusion that the Occupation Tax is an excise tax falling under Section E. Whether the Occupation Tax is viewed as a tax upon the privilege of retailing or as a sales tax, it is unquestionably an excise tax. *See Rosenow,* 715 F.2d at 279 n. 4. Moreover, while Section E's lan-

guage may limit its coverage to excise taxes on a "transaction," the legislative history indicates that Congress intended the term "transaction" to be defined broadly. The Joint Statement of the floor leaders, Senator DeConcini and Representative Edwards, stated that: *"[a]ll* Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes." 124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6567; 124 Cong.Rec. 32,416 (House), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6436, 6498 (emphasis added).[4] Thus, whether the Occupation Tax is viewed as a sales tax or a tax on the occupation of retailing, it would appear that it falls within Section E's scope.

In any event, we need not resolve whether the Occupation Tax is an excise tax "on a transaction" or resolve any possible conflict between Section A or Section E. Under either Section A or Section E claims for taxes that became due more than three years before the filing of the bankruptcy petition are discharged. Because the State's Occupation Tax claim against Groetken was "stale" when Groetken filed his petition, the State's judgment is dischargeable under either provision.

The State, however, argues that the resolution of this case is not so easy. The State contends that, while there are two separate tax statutes governing retail sales of personal property, there is in reality only one tax—a five-percent "sales" tax that retailers are required to collect. Because retailers are required to collect the Use Tax, the State argues that its judgment under the Occupation Tax Act is really just a judgment for the Use Tax Groetken collected. To support its argument that the "substance" of its tax claim should prevail over its "form," the State informs us that, whether it sues under the Use Tax Act or the Occupation Tax Act, a retailer's liability under either statute is normally measured

by the retailer's gross receipts. The State also contends that if its Occupation Tax judgment against Groetken is discharged, Groetken will be unjustly enriched by retaining the Use Tax he collected. The State conceded that it could not now obtain a separate Use Tax judgment against Groetken because its claim would be barred by the statute of limitations. *See* Ill.Rev. Stat. ch. 120, ¶¶ 439.12, 444, and 452½ (1985).

Although the State's argument has some appeal, we do not find it sufficiently persuasive to avoid the application of the Bankruptcy Code's plain language to the State's Occupation Tax Act claim. The Illinois legislature has, for whatever reasons, set up a complementary taxation scheme through its enactment of two distinct tax statutes. Each contains a detailed enforcement scheme, including the imposition of criminal sanctions. Given each statute's detailed enforcement scheme, it is difficult to see how either act could be declared a "legal fiction." As this circuit noted in *Rosenow,* "[t]he history and relationship of the two acts ... do not control how obligations under the two laws are to be treated in bankruptcy." 715 F.2d at 282. This is particularly so in light of the fact that the Illinois Court of Appeals has implicitly rejected the State's argument by treating the Occupation Tax separately from the Use Tax for bankruptcy purposes.

The Occupation Tax Act and the Use Tax Act impose separate tax obligations on retailers that the State can independently enforce. If a retailer fails to pay the Occupation Tax the State has a claim under the Occupation Tax Act *and* a claim under the Use Tax Act. The Occupation Tax is imposed directly on retailers. Retailers are not required to collect the tax. The Use Tax is imposed on purchasers. Retailers are required to collect this tax from purchasers on behalf of the State. These differences have critical significance under the Bankruptcy Code. The State may not care which tax debt it recovers because the

---

4. It should be noted that even though a tax may be an "excise tax" as the term is used in Section E, it may nonetheless fall under Section C if it is

required to be collected. *See Rosenow,* 715 F.2d at 279–80.

payment of one tax extinguishes both liabilities. However, when the State elects to sue solely under the Occupation Tax Act, it sues to collect a tax that a retailer is not required to collect. Here, the State made its choice and obtained a judgment solely on its Occupation Tax claim. That judgment was not based upon an obligation to collect or withhold any taxes.

We also are unpersuaded by the State's argument that characterizing the Occupation Tax as either a gross receipts tax or an excise tax allows Groetken to unjustly retain use taxes he may have collected from purchasers. As far as the Bankruptcy Code is concerned, the State may pursue its remedies under the Use Tax Act regardless of how stale those claims may be. The only barrier to the State's Use Tax claim in this matter is the State's own limitations period. *See* Ill.Rev.Stat. ch. 120, ¶¶ 439.12, 444, and 452½ (1985). The fact that the State's Use Tax claim may now be time-barred does not transform the Occupation Tax into a "trust fund" tax. If the State is concerned about the possibility of discharge in bankruptcy after any applicable limitations period may run, the State need only obtain a timely judgment against a debtor under the Use Tax Act. In fact, given the State's own contention that the evidence submitted under either statute will, as a practical matter, consist only of the retailer's gross receipts, we see no practical reason why the State does not always sue under both statutes.

In sum, while the Occupation Tax Act and the Use Tax Act are complementary statutes, their complementary nature does not warrant the same treatment under the Bankruptcy Code. Because the State's judgment was solely under the Occupation Tax Act and retailers are not required to collect the Occupation Tax, its judgment does not fall under the "trust fund" tax exemption from discharge. Accordingly, the district court is

REVERSED.