**In re Karen RAIMAN, Debtor.**

**Karen RAIMAN, Appellant,**

v.

**STATE BOARD OF EQUALIZATION OF the STATE OF CALIFORNIA, Appellee.**

**BAP No. CC–93–2309–PaHV.**

**Bankruptcy No. LA 91–79984 GM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 21, 1994.

Decided Sept. 30, 1994.

Evan L. Smith, Los Angeles, CA, for appellant.

Bonnie Holcomb, Los Angeles, CA, for appellee.

1. Hon. Jim D. Pappas, Chief Bankruptcy Judge for the District of Idaho, sitting by designation.

Before PAPPAS[1], HAGAN and VOLINN, Bankruptcy Judges.

## OPINION

PAPPAS, Bankruptcy Judge:

## OVERVIEW

The Appellant Karen Raiman, a Chapter 7 Debtor, filed a motion to enforce discharge in the bankruptcy court relating to certain tax claims asserted against her by the California State Board of Equalization. In addition, Debtor requested compensatory sanctions be imposed against the creditor. The bankruptcy court found that the tax claims were not dischargeable and entered an order denying the motion and request for sanctions. We AFFIRM the bankruptcy court.

## FACTS

At all relevant times, the Debtor was a self-employed marketing consultant whose principal business was formulating advertising campaigns for sale to film producers. Debtor had timely filed tax returns covering income from those projects where she had taxable sales for the 1987, 1988 and 1989 tax periods. The State Board of Equalization of the State of California ("SBE") conducted an audit of the returns and assessed Debtor for substantial additional taxes pursuant to California Revenue and Taxation Code § 6051 ("R & T Code"). Debtor filed a Chapter 7 bankruptcy petition on June 18, 1991, and in November of 1991 received a discharge of her debts.

In early 1992, SBE contacted Debtor and demanded payment of its tax claim. When Debtor did not pay the additional taxes, and after conducting meetings with Debtor which did not result in a decrease in the assessment, SBE initiated collection efforts against Debtor, such as levying on her bank accounts and seizing her state income tax refunds. In July of 1993, Debtor filed a Motion to Enforce Discharge with the bankruptcy court

seeking reimbursement of amounts seized by SBE and an award of sanctions alleging that SBE's collection actions violated her discharge.

The bankruptcy court conducted a hearing on Debtor's motion on September 9, 1993, at which time it made oral findings of fact and conclusions of law on the record. On November 10, 1993, the court entered its order denying motion to enforce discharge. The Debtor filed a timely appeal from the order.

## ISSUES

The following questions are presented for resolution by this panel on appeal:

1. Whether the California tax statute upon which the assessments were based provides for a tax on or measured by gross receipts so as to except the tax debt from discharge in bankruptcy; and

2. If the tax is in fact a tax on or measured by gross receipts, whether it must be assessed on an entire taxable year to be nondischargeable.

## STANDARD OF REVIEW

■ The lower court's conclusions that the subject tax was on or measured by gross receipts and that a tax need not be for an entire taxable year to be afforded priority are interpretations of the Bankruptcy Code which are conclusions of law subject to *de novo* review on appeal. *West v. U.S.A. (In re West)*, 5 F.3d 423, 425 (9th Cir.1993), *cert. den.*, —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *In re King*, 122 B.R. 383, 384 (9th Cir. BAP 1991).

**2.** All references are to the Bankruptcy Code, Title 11, U.S.C., unless otherwise noted.

**3.** 11 U.S.C. § 507(a)(7)(A) provides:
(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

## DISCUSSION

■ A discharge in a bankruptcy case operates as an injunction against any action to collect, recover or offset any discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). *See also In re American Hardwoods, Inc.*, 885 F.2d 621, 626 (9th Cir. 1989). A debt is dischargeable unless it is included within a specific exception to discharge. *Ohio v. Kovacs*, 469 U.S. 274, 278, 105 S.Ct. 705, 708, 83 L.Ed.2d 649, 652 (1985). Section 523(a) [2] sets forth the list of the kinds of debts which are excepted from discharge. Section 523(a)(1)(A) excepts from discharge tax debts which are given priority pursuant to Section 507(a)(7). Section 507(a)(7)(A), in turn, grants priority to "a tax on or measured by income or gross receipts" for a taxable year ending on or before the date of the filing of the petition for which a return is due.[3]

■ The first contention made by Debtor in this context is that the tax here in question was not "on or measured by income or gross receipts." As a result, Debtor argues, the California tax is not afforded priority and it has been discharged in Debtor's bankruptcy case.

The taxes in this case were imposed under authority of § 6051 of the California R & T Code, which provides in relevant part:

§ **6051. Levy on retailer's gross receipts; rate**

For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2½ percent of the gross receipts of any retail-

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

er from the sale of all tangible personal property sold at retail in this state. . . .

Cal.Rev. & Tax.Code § 6051 (West 1987 & Supp.1994). The definition of "gross receipts" under the R & T Code is found at § 6012, which provides in part:

**§ 6012. Gross receipts; excluded items**

(a) "Gross receipts" mean the total amount of the sale or lease or rental price, as the case may be, of the retail sales or retailers, valued in money, whether received in money or otherwise, without any deduction on account of the following:

(1) The cost of the property sold. . . .

(2) The cost of the materials used, . . .

. . . .

(c) "Gross receipts" do not include any of the following:

(1) Cash discounts allowed and taken on sales.

(2) Sale price of property returned by customers. . . .

(3) The price received for labor or services used in installing or applying the property sold.

(4)(A) The amount of any tax . . . imposed by the United States upon or with respect to retail sales whether imposed upon the retailer or the consumer.

Cal.Rev. & Tax.Code § 6012 (West 1987).

The parties agree that the assessment in this case is a "tax" as required pursuant to Section 507(a)(7)(A). The parties' disagreement centers on the issue of whether the California tax is "on or measured by gross receipts." Debtor argues that according to the R & T Code provisions quoted above, the tax assessment was not on "gross receipts" since a taxpayer is allowed to make certain exclusions from her total receipts. In other words, Debtor insists that in order to be afforded priority pursuant to Section 507(a)(7)(A), and thus be nondischargeable pursuant to Section 523(a)(1)(A), the tax must be one which is measured by all re-

ceipts received by a taxpayer, without any items or transactions excluded.

Did Congress intend the term "gross receipts" found in Section 507(a)(7)(A) to have the specific meaning urged by Debtor? The legislative history to Section 507(a)(7)(A) is very limited and supplies no useful explanation of the meaning of the phrase "on or measured by income or gross receipts." In addition, neither the parties nor the panel can locate any court decisions directly on point. There are few decisions generally relating to this Code section at all. The bankruptcy court, in dialogue with the parties at the hearing, cited the case of *In re Groetken*, 843 F.2d 1007 (7th Cir.1988) as supporting the proposition that a tax on sales is a tax on or measured by gross receipts. However, a close review of the decision reveals that it is not convincing authority in this case.

The Court of Appeals in *Groetken* was confronted with a state occupation tax similar in operation to the tax involved here. However, the issue of whether the tax in the *Groetken* case was a tax on or measured by income or gross receipts was not raised by the parties nor addressed by the court. Rather, the court assumed it was dealing with a gross receipts tax and was instead concerned with determining whether the Section 507(a)(7)(A) priority for taxes on gross receipts was intended to be the same as that priority afforded to taxes on income. *Id.* at 1013. The court held that the Code granted equal priority to claims for gross receipt taxes as well as income taxes, a conclusion of no consequence in this case. *Id.*

In *In re O.P.M. Leasing Services, Inc.,* 60 B.R. 679 (Bankr.S.D.N.Y.1986), the bankruptcy court was asked to determine whether a claim filed by the state under the Texas franchise tax law was entitled to priority under Section 507(a)(7)(A). The state statute fixed the amount of the tax due from a corporation based upon the value of its capital. However, where a company also did business in other states, only that portion of the capital allocated to Texas under the stat-

utory formula was taxed. The capital was allocated between states .based upon that portion of the corporation's gross receipts generated within Texas as compared to elsewhere. *Id.* at 681–682.

In finding that the Texas tax was not a gross receipts tax for purposes of the bankruptcy priority provisions, the Court concludes:

> The mere mention of gross receipts in the § 171.106 [Tex.Tax Code Ann.] formula does not automatically activate § 507(a)(7)(A) and accord the State priority status. The State, however, makes precisely such an argument, ascribing an extraordinarily broad meaning to the word "measure" to encompass the word "allocate." This interpretation would emasculate the words of § 507(a)(7)(A), and would render the strict construction of the § 507(a)(7)(A) priority statute meaningless. The gross receipts ratio has no impact on the measurement of the tax as it relates to capital, and thus the tax in actuality is not on or measured by gross receipts.

*Id.* at 682.

While this decision is insightful, it also is not precisely on target here.

It thus appears the panel must resolve a question of first impression. As such, an analysis of Section 507(a)(7)(A) is necessary.

■ Resolving a dispute over the meaning of a provision of the Code begins where all such inquiries must originate, with the language of the statute itself. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 294 (1989). If the statutory language is plain, the sole function of the courts is to enforce it according to its terms. *Id.*

■ The Court also acknowledges that the priority provisions of the Code should be closely construed in order to promote equality of distribution among a debtor's creditors. *In re Finevest Foods, Inc.,* 140 B.R. 581, 583 (Bankr.M.D.Fla.1992). Similarly, exceptions to discharge under Section 523(a) are strictly interpreted in favor of the "fresh start" policy of the Code. *Snoke v. Riso (In re Riso),* 978 F.2d 1151, 1154 (9th Cir.1992). Section 507(a)(7) is narrower than its predecessor under the Bankruptcy Act, Section 64(a)(4), 11 U.S.C. § 104(a)(4) (repealed in 1978), which granted priority to any taxes owed to the United States, a state or subdivision. *In re Lorber Industries of California, Inc.,* 675 F.2d 1062, 1066–68 (9th Cir.1982).

The interpretive issue here involves the meaning of the phrase "gross receipts" in the statute. While perhaps not as apparent as Debtor would prefer, when the statutory language is attributed its natural and ordinary meaning, its reach is sufficiently broad to encompass the California tax here examined.

Debtor believes that since Section 507(a)(7)(A) says "gross receipts," that in order to come within the statute, California's tax must in fact be calculated based on the total receipts of a taxpayer, and that a tax on anything less than all of those receipts is not a tax on gross receipts and is therefore dischargeable. SBE contends that because the state statute starts with the total receipts of the taxpayer in calculating the tax, the statute is a tax on Debtor's gross receipts and is therefore non-dischargeable pursuant to Sections 523(a) and 507(a)(7)(A).

■ The term "gross receipts" is not defined in the Bankruptcy Code. One common reference has explained the term to mean "the entire earnings of a business without deduction." Ballentine's Law Dictionary 537 (3d ed. 1969). Deductions are commonly understood to be items such as the costs of labor or raw materials which are subtracted from the amount of total receipts to arrive at a lesser amount usually referred to as net receipts. Deductions represent costs incurred by all businesses, and because of this, while they certainly impact the amount of the profits enjoyed by the business from sales, they do not impact the amount of total sales receipts.

■ However, deductions should be contrasted with, and are wholly different than,

exclusions from receipts. Exclusions are items that a legislative body as a matter of policy has determined should not be included in gross receipts. For example, a merchant may make a sale but later be required to refund the purchase price to a buyer because an item has been justifiably returned. In that case, while the merchant has certainly made a sale, and received the proceeds from the sale, the legislature may provide that because of the return and refund, those sale receipts should not be considered a part of the total income of the business for purposes of imposition of the tax.

Section 6012 of the R & T Code illustrates the difference between exclusions and deductions in defining gross receipts. Section 6012(a) provides that gross receipts means the total amount of retail sales without allowing for deduction of listed items such as the cost of property sold and the cost of materials used (i.e., deductions). In this regard, then, the California statute is consistent with the dictionary definition of gross receipts, and the bankruptcy court's ruling would not appear to vary the plain meaning of the statutory language.

On the other hand, subsection (c) of Section 6012 specifies that gross receipts will not include certain listed items or transactions, such as *cash discounts and refunds allowed for returned items* (i.e., exclusions). Once again, this list is a statement of legislative policy in applying the state's tax laws to its businesses. The sections read together provide a definition for gross receipts by way of excluding certain items in the calculation but not allowing for deductions.

The statute uses total sales as a starting point and excludes the listed items to reach what it considers for tax purposes "gross receipts." The legislature could have instead attempted to define gross receipts by adoption of an extensive list of items to be included. If it had taken the latter approach, Debtor's argument should seem absurd. Under Debtor's logic, unless the California legislature included all conceivable items in the gross receipts definition, it is not a tax on

gross receipts and pursuant to Section 507 and 523 is dischargeable. Therefore, if Debtor could identify any sort of receipt that was not included in the definitional list, the tax would be dischargeable in bankruptcy.

Debtor suggests, in other words, that only where a state has imposed the broadest possible tax will it be nondischargeable in bankruptcy. There is no reason to believe that Congress would command that a tax on all receipts of a taxpayer not be subject to discharge, whereas a tax on some of the receipts of a taxpayer, minus certain items such as refunds and other taxes, is dischargeable. Even without reviewing the tax laws of every state, it is doubtful that a significant number, if any, calculate gross receipt taxes without even a single exclusion. If Debtor's position is correct, Section 507(a)(7)(A) would likely be ineffective to grant priority for, or nondischargeable status to, most taxes measured on these receipts.

The better approach is to recognize that the tax assessed in this case is a tax on or measured by gross receipts and would therefore be nondischargeable pursuant to Section 507(a)(7)(A) and 523(a)(1)(A). There is no indication in the statute itself, or in any secondary authority, that Congress intended the term "gross receipts" to have a strict federal definition rigidly limited to those situations where a tax is imposed on total receipts without exclusion.

■ In addition, holding that the California tax is a gross receipts tax conflicts with no significant state or federal interest, nor with any other aspects of the Code. *See U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. at 243, 109 S.Ct. at 1031, 103 L.Ed.2d at 295. No violence is done to the notion of strict construction of the priority provisions by this interpretation. As noted above, it is the Debtor's reading of the law that would grant priority to and except from discharge the larger tax burdens, while denying such treatment to narrowly drawn, less onerous taxing schemes.

■ And unlike the Texas statute reviewed in the *O.P.M. Leasing* decision, the

California tax is in a true sense "measured by" gross receipts. That is, the amount of the taxpayer's total receipts is an integral initial component of the formula with reference to which the amount of the tax is determined, and not merely a method of apportioning liability for a tax already calculated in some other fashion. That there are other factors in the formula (i.e. the statutory exclusions from total receipts) in arriving at California's version of gross receipts is of no compelling significance under these facts.

 Debtor also argues that the California tax is not a priority tax because it is not a tax "for a taxable year" which Debtor contends is required by Section 507(a)(7)(A). Debtor maintains that priority is given only for taxes imposed on an annual basis, and that since the California tax is assessed quarterly, it is outside the priority and discharge exception in the Bankruptcy Code.

Without doubt, § 6451 of the California R & T Code provides that these taxes are due and payable quarterly, and R & T Code § 6452 provides that a tax return must also be filed quarterly. However, Section 507(a)(7)(A) does not mandate that taxes on gross receipts for a "quarter" are not afforded priority.

 The term "for a taxable year" found in Section 507(a)(7)(A)(i) modifies the time limitation provision of subsection (i). The phrase is not intended to limit or define the kind of tax included within the statute. The phrase "for a taxable year" is instead used in subsection (i) to fix a point in time as a reference for calculating which of the taxes are to be included within the priority. This language does not limit priority for a tax on gross receipts to only those statutory schemes that impose a tax solely based on a taxable year. No purpose could be advanced for such a technical distinction in the operation of the statutes. Therefore, the tax in this case assessed pursuant to R & T Code § 6051, even though due and payable quarterly, would be afforded priority pursuant to Section 507(a)(7)(A) and would be excepted

from discharge under Section 523(a)(1)(A), and the court's decision was correct.

One final point should be discussed, though. The parties in their briefing on appeal have also addressed, to a less significant degree, whether the California .tax would also constitute an "excise tax" under Section 507(a)(7)(E) of the Code, providing another basis for excepting SBE's claim from Debtor's discharge. The bankruptcy judge mentioned these arguments in her remarks from the bench only in passing: "And, therefore, a good argument, at least, can be made that the [California] tax is also an excise tax, as well as a gross receipts tax." Appellant's Excerpt of Record on Appeal, p. 61, ¶ 3, Line 23. It is unclear whether this comment should be construed as a formal conclusion of law by the court.

In *In re George,* 95 B.R. 718 (9th Cir. BAP 1989), *aff'd,* 905 F.2d 1540 (9th Cir.1990), this panel held that the California statute here under review was a "tax" for purposes of excepting the obligation from discharge under Section 523(a)(1)(A). *Id.* at 721. In *George,* the bankruptcy court had held the tax was an excise tax under Section 507(a)(7)(E), a conclusion that was not reviewed by the panel on appeal, but which did generate the following note in its opinion:

> There may be a question as to whether the bankruptcy court correctly determined that the "sales tax" in this case should be considered an "excise tax" under § 507(a)(7)(E) rather than a "trust fund tax" under § 507(a)(7)(C) or a "tax on or measured by gross receipts" under § 507(a)(7)(A). The fact that under state law, sales taxes are *generally* considered excise taxes is not dispositive of the above issue. *See e.g. In re Groetken,* 843 F.2d 1007 (7th Cir.1988) ....

95 B.R. at 720, n. 4. The "state law" to which the panel referred was the decision in *Livingston Rock & Gravel Co. v. De Salvo,* 136 Cal.App.2d 156, 288 P.2d 317, 319 (1955) wherein the California Supreme Court held that § 6051 created an excise tax.

The distinction proved insignificant to the outcome of *George.* Similarly, because we

find that the tax here is a gross receipts tax, and therefore excepted from discharge, this panel makes no decision on whether § 6051 might also be an excise tax.

## CONCLUSION

For the reasons stated, the bankruptcy court did not err in finding that the tax claim of SBE is a "tax on or measured by gross receipts"; that pursuant to Section 507(a)(7)(A) the tax claim would be afforded priority; and that pursuant to Section 523(a)(1)(A) the claim is nondischargeable. The court was correct in denying Debtor's motion to enforce discharge and request for compensatory sanctions for civil contempt. AFFIRMED.