In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――

No. 04-4053

ILLINOIS DEPARTMENT OF REVENUE,

*Plaintiff-Appellee,*

*v.*

HAYSLETT/JUDY OIL, INC.,

*Defendant-Appellant.*

―――――――

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-2023—**Michael P. McCuskey**, *Chief Judge.*

―――――――

ARGUED SEPTEMBER 27, 2005—DECIDED OCTOBER 18, 2005

―――――――

Before FLAUM, *Chief Judge*, and BAUER and SYKES, *Circuit Judges.*

FLAUM, *Chief Judge.* Hayslett/Judy Oil ("Hayslett") has filed for Chapter 11 bankruptcy and has submitted a reorganization plan to the bankruptcy court. The proposed reorganization plan contains a priority payment to the state of Illinois. That payment amounts to three years of unpaid Illinois Motor Fuel Tax ("the Tax") and an additional five percent of the prioritized amount. The Illinois Department of Revenue ("the Department" or "the government") claims that the plan is deficient in two respects. First, the plan characterizes the tax as an "excise tax" under § 507(a)(8)(E) of the Bankruptcy Code ("the Code"), which allows Hayslett

to discharge the unpaid motor fuel tax that is more than three years overdue. The Department claims that the tax should fall under § 507(a)(8)(C) of the Code, which does not allow for the discharge of older debt. Secondly, the Department claims that the proposed re-organization plan is unacceptable under § 1129 of the Code because it does not explicitly account for interest payments on the unpaid tax. Hayslett counters that the plan implicitly provides for interest since it will pay the Department five percent more than Hayslett believes is owed.

While the bankruptcy court has approved the plan, the district court has reversed, ruling for the Department on both issues. Hayslett appeals the district court's decision, and asks that this Court reinstate the bankruptcy court's decision. For the following reasons, we affirm the district court and remand the case to the bankruptcy court for further proceedings consistent with this opinion.

## I.  Background

Hayslett is a corporation that operates a bulk petroleum delivery business. It filed for Chapter 11 bankruptcy in April of 2003. It filed a plan for re-organization in August of that year. The plan included payments to the Department of $1,155.00 monthly for approximately five years, totaling $69,300.00. That amount reflects three years of back taxes, plus an additional amount of about five percent that Hayslett claimed represented implicit interest payments. In October, the Department filed "Claim No. 13" for unpaid Illinois Motor Fuel Tax. The Department believed that Hayslett was liable for all unpaid Motor Fuel Tax, not just the taxes from the past three years as Hayslett claimed. The Department asked that $256,387.44 of unpaid tax be given priority status under § 507(a)(8) of the Code.

The Department objected to Hayslett's proposed re-

organization plan on the ground that the plan did not grant priority status to the entire amount owed. The Department also argued that the plan did not provide for interest payments on the amount that was given priority, and therefore failed under § 1129 of the Code. Hayslett argued that the tax was an excise tax, and that therefore, under § 507(a)(8)(E), only the past three years of unpaid tax, or $65,830.44, were entitled to priority status. Moreover, it argued that its re-organization plan, although not explicitly accounting for interest, resulted in total payments to the government of five percent more than the amount owed. Therefore, Hayslett claimed, the plan implicitly provided for interest and met the requirements for approval set out in § 1129 of the Code.

The bankruptcy court heard arguments from both parties and ruled in favor of Hayslett. It relied primarily on an unpublished opinion from the bankruptcy court in the Southern District of Illinois, *In re Funk*, No. 97-33000, 1999 WL 33596475 (Aug. 16, 1999). The bankruptcy court issued an order confirming Haylett's proposed re-organization plan in December 2003.

The Department appealed the order to the district court in February 2004, raising the same objections that it had raised in bankruptcy court. In October 2004, the district court entered an order stating that the Department was "entitled to interest on the tax claim throughout the payment period," and that the motor fuel tax "falls squarely within the language" of § 507(a)(8)(C) of the Code; thus Hayslett was precluded from discharging the debt beyond the three years preceding filing. Accordingly, the district court entered judgment reversing the bankruptcy court and remanded the case for further proceedings. The district court decision rejected the bankruptcy court's reliance on *In re Funk,* instead relying on Seventh Circuit cases *Rosenow v. Illinois Department of Revenue,* 715 F.2d 277 (7th Cir.

1983), and *Groetken v. Dep't of Revenue*, 843 F.2d 1007 (7th Cir. 1988). The debtor timely appealed the district court's decision.

## II. Discussion

Under § 507 of the Code, governmental claims are eighth in payment priority when a bankruptcy claim is filed. 11 U.S.C. § 507(a)(8). The type of tax involved determines what amount of back taxes are prioritized. Under § 507(a)(8)(C), government claims are prioritized to the extent that such claims are for "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. § 507(a)(8)(C). This subsection applies to so-called "trust fund taxes." *Rosenow v. Ill. Dep't of Revenue*, 715 F.2d 277, 279 (7th Cir. 1983). These taxes are collected from individuals by a third party who then remits the tax to the government. Income tax and social security tax are common examples of "trust fund taxes." *Id.* This Circuit has also concluded that the Illinois Use Tax, a sales tax, falls under this subsection. *Id.* Taxes that fall under § 507(a)(8)(C) can never be discharged in bankruptcy, regardless of their temporal distance from the date of bankruptcy filing. 11 U.S.C. § 507(a)(8)(C).

Excise taxes, however, are treated differently under the statute. Under § 507(a)(8)(E), governmental claims are prioritized to the extent that they are for an "excise tax."[1] 11 U.S.C. § 507(a)(8)(E). Under this subsection, claims may

---

[1] Excise tax is defined in Black's Law Dictionary as, "A tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." BLACK'S LAW DICTIONARY 605 (8th ed. 2004).

be discharged after three years.[2]

This Court is now asked to resolve whether the Illinois Motor Fuel Tax falls under § 507(a)(8)(C) or § 507(a)(8)(E), an issue of first impression. The Motor Fuel Tax Law, 35 ILL. COMP. STAT. 505/6, sets out the following obligations for distributors like Hayslett:

> A distributor who sells or distributes any motor fuel, which he is required by Section 5 to report to the Department when filing a return, shall . . . collect at the time of such sale and distribution, the amount of tax imposed under this Act on all such motor fuel sold and distributed, and at the time of making a return, the distributor shall pay to the Department the amount so collected . . . and shall also pay to the Department an amount equal to the amount that would be collectible as a tax in the event of a sale thereof on all such motor fuel used by said distributor during the period covered by the return.

35 ILL. COMP. STAT. 505/6 (2002).

The Department argues that because this tax requires a distributor to "collect at the time of . . . sale . . . the amount of tax imposed under this Act on all such motor fuel

---

[2] The relevant statutory text provides that governmental claims can receive priority to the extent that they are for an excise tax on:

> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of filing of this petition.

11 U.S.C. § 507(a)(8)(E).

sold . . . and pay to the Department the amount so collected," it is a "tax required to be collected" within the meaning of § 507(a)(8)(C).

Hayslett counters that the Tax is an excise tax within the meaning of § 507(a)(8)(E). It states four principal arguments to support its position:

1.  The tax is listed under the section titled "excise taxes" in the table of contents of the Illinois Compiled Statutes, and is listed under the general heading "excise taxes" in the code's index.

2.  The Department assigned Hayslett an "excise tax number" in its claim filed with the bankruptcy court.

3.  The Department's bankruptcy claim contains Notices of Lien for the Motor Fuel Taxes. Each of these notices includes, on the second page, the heading "excise tax," with the tax liabilities that are the subject of each notice listed under that heading.

4.  The forms for the Motor Fuel Tax liability have a different format than the forms that a retail seller uses to compute tax liability. The Motor Fuel Tax is based on gallons of fuel that pass through the distributor's inventory during the month, while typical sales taxes are based on the amount of receipts that were generated from the distributor's sales that month. Hayslett argues that this difference reflects a fundamental difference between the two taxes. The Illinois Use Tax, which *Rosenow v. Illinois Department of Revenue,* 715 F.2d 277 (7th Cir. 1983), held fell under § 508(a)(8)(C), is an "add on" tax which is added to the price that a retail customer pays to purchase a product. In contrast, the Tax is hidden from the customer, who pays it directly through the retail price instead of through an add-on at the end of the purchase. The distributor remains free to internalize the tax and not pass it along to the consumer, Hayslett therefore argues, that the tax cannot fairly be characterized as a "trust fund tax" which requires the

distributor to collect the consumer's money in trust for the government.

The Department argues that none of these factors prevent the tax from falling under the purview of § 507(a)(8)(C). Under *Rosenow*, a tax can be *both* an excise tax and a non-delegable "trust fund tax." *Rosenow*, 715 F.2d at 280 ("We . . . conclude that excise taxes which a retailer has collected from purchasers are nondischargeable despite their age [under § 507(a)(8)(C)].") Citing both the legislative history and the plain statutory language of the current statute's predecessor (which has identical wording to the current statute), the court held that subsection C applied to excise taxes that a retailer had collected from purchasers. *Id.* The Court ruled that any tax, including an excise tax, that 1) is required to be collected and withheld and 2) the debtor is liable for in whichever capacity, is non-dischargeable under §507. *Id.*

Hayslett claims that the *Rosenow* decision is inapplicable to the Tax, citing differences between the Tax and the Use Tax at issue in the *Rosenow* case. This argument is unconvincing, however. Regardless of the particulars of the tax at issue in the case, *Rosenow's* framework for evaluating whether § 507(a)(8)(C) applies to a tax is equally useful here. In both *Rosenow* and its complementary case, *Groetkin v. Dep't of Revenue*, 843 F.2d 1007 (7th Cir. 1988), the Seventh Circuit determined whether a tax falls within the purview of subsection C by asking if the tax is imposed on the consumer or the retailer.

In *Rosenow*, the Use Tax was determined to be imposed on the consumer passed through the retailer, and thus constituted the sort of "trust fund tax" contemplated in subsection C. *See Rosenow*, 715 F.2d at 280 ("The Senate reports thus underline the fact that there are really two types of sales tax liabilities at issue: those which are owed personally by a debtor, for example, on purchases he

himself has made, and those incurred by a retailer's customers, which are collected by the retailer under the authority of the state and then owed by the retailer to the state. In relation to the latter, the retailer in fact appears to be holding for the benefit of the state taxes which his customers would otherwise owe[.]"). In *Groetken*, the court ruled that the Illinois Occupation Tax, the complementary tax to the Use Tax at issue in *Rosenow*, was imposed directly on the retailer and thus did not fall under subsection C. *Groetken,* 843 F.2d at 1013 ("Under Section C's plain language, the Occupation Tax is not a "trust fund" tax. The Occupation Tax is imposed directly upon retailers.").

This distinction is eminently reasonable. The Code is not designed to unjustly enrich a company that converted consumers' tax dollars to its own use, but is designed to allow forgiveness of debts that a company accrued for itself. These cases and their logic are applicable to any tax, and therefore the relevant question in this case becomes whether the Tax was imposed on the consumer or the distributor.

Illinois state law is illuminating on the issue of whether the Tax is imposed directly on consumers. Although this Court is not bound by the State of Illinois's interpretation of the Tax as it relates to the federal Bankruptcy Code, a state court's interpretation of its own statute should still play "an important role in determining how a debtor's liabilities will be characterized under the Bankruptcy Code." *Groetken,* 843 F.2d at 1013. As the Court stated in *Groetken,* "In applying the various code provisions, the federal courts look to state law to determine the exact nature of a person's rights and obligations under state law." *Id*. (citing *New Jersey v. Anderson,* 203 U.S. 483, 491 (1906); *City of New York v. Feiring*, 313 U.S. 283, 285 (1941); *In re Adams*, 40 B.R. 545, 547 (E.D. Pa. 1984). The Illinois Supreme Court has ruled that a prior version of the Tax

was assessed on the *consumer* and not the *distributor*. *American Oil Co. v. Mahin*, 273 N.E.2d 818, 821 (Ill. 1971) ("[I]t is clear to us that the Motor Fuel Tax Law is imposed on the consumer of fuel and that the retailer or distributor acts only as the collection agent for the State.").

The plain language of the statute itself leads to the same conclusion. Most convincingly, under the "Purpose" section of the Motor Fuel Tax Law, the legislature writes, "It is the purpose of Section[ ] 2 . . . of this Act to impose a tax upon the privilege of operating each motor vehicle . . . upon the public highways and waters of this State." 35 ILL. COMP. STAT. 505/17 (2004). Section 2 of the statute also explicitly states, "A tax is imposed on the privilege of operating motor vehicles upon the public highways[.]" 35 ILL. COMP. STAT. 505/2 (2004).

Hayslett's contention that because the tax could be internalized, it cannot fairly be assumed that it is imposed on the consumer, is not so convincing as to override such strong statutory language and state law precedent. Indeed, Illinois law is clear that the Tax is not part of a retailer's selling price. *See Jones v. Dep't of Revenue*, 60 Ill. App. 3d 886, 893 (Ill. App. 1978). Moreover, the advertised price of the fuel generally gives notice to consumers that the price includes tax.

In sum, the Tax meets the two part test for inclusion under § 507(a)(8)(C) found in *Rosenow* and *Groetken*. The tax is "required to be withheld." *See* 35 ILL. COMP. STAT. 505/6 (2002) ("A distributor . . . *shall . . . collect* at the time of such sale and distribution the amount of tax imposed under this Act[.]" (emphasis added)). Additionally, Hayslett is a debtor who is "liable in whatever capacity," since it collected those taxes from consumers. The Tax may be an excise tax, but we see no reason why it cannot be an excise tax imposed on consumers that is collected by a third party, the distributor. Excise taxes such as this one also fall under

subsection C.

Because Hayslett's re-organization plan is invalid for not properly prioritizing the government's fuel tax claim, we need not reach the issue of whether the compensation plan contained adequate provisions for interest.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED and the case is REMANDED to the bankruptcy court for a decision consistent with this opinion.

A true Copy:

> Teste:

> _____
> *Clerk of the United States Court of*
> *Appeals for the Seventh Circuit*

USCA-02-C-0072—10-18-05